SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

JAMES CHUNG, ESQ.
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

United States District Court
Eastern District of New York                    1:20-cv-04926

| | |
|---|---|
| David Chung, Steven Hargrove, individually and on behalf of all others similarly situated,<br><br>                               Plaintiffs,<br><br>      - against -<br><br>Igloo Products Corp.,<br><br>                             Defendant. | Complaint |

     Plaintiffs DAVID CHUNG and STEVEN HARGROVE ("Plaintiffs"), individually and on behalf of all similarly situated, bring this Class Action Complaint against IGLOO PRODUCTS CORP. ("IGLOO" or "Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsels, allege as follows:

## NATURE OF THE ACTION

     1.     This is a consumer class action on behalf of consumers seeking remedy for Defendant's deceptive business practice in marketing, advertising and promotion of a line of ice coolers labeled "3 Day," "5 Day," "7 Day" or "120 Hour" ice retention (the "Products").   The Products are sold in numerous colors and sizes.   Defendant has engaged in, and continues to engage in, deceptive and misleading business practices in marketing and sale of the Products that

has caused injury to Plaintiffs and the putative class.

2.      Defendant sold to Plaintiffs and class members, and continues to sell the Products to consumers.   Defendant creates misleading and unsubstantiated claims to represent their Products.

3.      Defendant has led Plaintiffs and reasonable consumers to falsely believe that the Products will retain ice for certain period of time.   In so doing, Defendant falsely represented that the Product will retain ice for the same period of time during normal usage.

4.      Plaintiffs and the members of the class reviewed Defendant's misleading labeling, reasonably relied on the label on the Product, and were deceived into purchasing the Product.

5.      Defendant's actions violate various New York consumer protection laws as well as similar deceptive and unfair practices and consumer protection laws in other states and the District of Columbia.   Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").   The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members, Plaintiffs, as well as members of the proposed class, are citizens of a state different from Defendant.

7.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omission, and acts giving rise to the claim occurred in this District where Defendant distributed, marketed, advertised, and sold the various ice cooler products at

issue throughout New York.

8.      Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue because Plaintiffs and a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

9.      This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York, has marketed, advertised and made sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## PARTIES

10.     Plaintiffs David Chung is a citizen of the State of New York and resides in Richmond County.

11.     Plaintiff purchased the Igloo Latitude 90 quart cooler for personal use in reliance of the labeling.

12.     Plaintiff was exposed to Defendant's "120 Hour Ice Retention" claim by reading the labeling on the ice cooler prior to purchase.    Plaintiffs Chung paid $ 49 excluding tax for the product at Costco.    Plaintiff Chung utilizes Defendant's Product for fishing, travel and picnic/barbeque mostly in temperature ranging between 70 to 90 degrees Fahrenheit.    Plaintiff Chung initially puts about 30 – 40 pounds of ice during usage.    In his experience, Plaintiff Chung avers that the ice is retained for maximum 2 days while draining the water every few hours.

13.     In order to keep fish and food fresh and keep from spoiling, Plaintiff Chung is required to replenish the ice on fishing trips or long term travel.

14.     Plaintiff Steven Hargrove is a citizen of the state of New Jersey and resides in Gloucester County.   Plaintiff Hargrove purchased the Igloo Latitude 90 quart cooler for personal use in reliance of the labeling.

15.     Plaintiff Hargrove was exposed to Defendant's "120 Hour Ice Retention" claim by reading the labeling on the ice cooler prior to purchase.   Plaintiff Hargrove paid $ 60 excluding tax for the product at Costco.   Plaintiff Hargrove utilizes Defendant's Product for fishing, picnic and barbeque mostly in temperature ranging between 80 to 90 degrees Fahrenheit.   Plaintiff Hargrove initially puts about 18 – 24 pounds of ice during usage.

16.     On long fishing trips, Plaintiff Hargrove puts 3 to 4 bags of ice in the cooler.   On the way home, he is puts another 2 – 3 bags of ice in the cooler.   By the time he arrives at home, the cooler is mostly water with some pieces of ice floating on it.

17.     On a barbeque or picnic, Plaintiff Hargrove noticed that most of the ice has melted into water by late afternoon.

18.     Based on the representations made by Defendant, Plaintiffs expected the product to perform as described.

19.     The product did not perform as represented on the labeling.   Therefore, Plaintiffs suffered injury-in-fact.   Had Plaintiffs known the truth about the misrepresentations and omissions, Plaintiffs would not have purchased the Product.

20.     Instead, Plaintiffs may have purchased a competing product.

21.     Plaintiffs cannot rely on the truthfulness of the Product in the future unless Defendant makes corrective changes.   Plaintiffs may consider future purchase if Defendant engages in corrective labeling and advertising.

22.     Defendant IGLOO PRODUCTS CORP., is a corporation organized under the laws

4

of Delaware with corporate address of 777 Igloo Road, Katy, TX 77494, Waller County and the address for service of process is c/o Corporation Service Company, D/B/A CSC-Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, TX 78701.   Defendant manufactured, packaged, distributed, advertised, promoted and sold the products to millions of consumers nationwide.

23.     Defendant manufactures, markets and sells ice coolers under "Igloo" brand name throughout the United States.   The advertisement for the Product that was relied upon by Plaintiffs was prepared and approved by Defendant and was disseminated by Defendant and its agents with misrepresented product labelling alleged herein.

24.     The labelling and advertising were designed to encourage consumers to purchase the Products and misled the reasonable consumer into purchasing the Products.   Defendant distributes the Products and created and/or authorized the unlawful, fraudulent, misleading, deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

25.     A good quality portable ice cooler is an indispensable outdoor equipment for many people during summer months.   Ice coolers are essential for traveling, camping trips, fishing trips, barbecues, picnics and other outdoor gatherings.   To that end, consumers search for a durable cooler with maximum ice retention ability that are cost-effective.

26.      Defendant manufactures various models of ice coolers and sells the Products throughout the United States through a network of brick and mortar and online stores.   These stores include, but are not limited to, Walmart, K Mart, Target, Costco, Amazon and eBay.   The price range of the Products are between $20 to $ 250, excluding tax.

27.     Defendant sells a line of ice coolers with a claim of "3 Day," "5 Day," "7 Day," or "120 Hour" ice retention."   Some Products contain disclaimers such as "Under Controlled

Conditions in 90 degrees constant."   The disclaimers, when present, is in lighter color and very small font to prevent buyers from noticing it.   A sampling of Defendant's Product labelling is illustrated below:





28.   The definition of "ice retention" varies among different groups.   The scientific definition of ice is "solid state of water," or "water that maintains 32 degrees Fahrenheit."   A dictionary definition of "retain" is to keep in possession or able to hold" certain characteristic for a specified period of time.   Under this definition, any amount of ice left in an ice cooler should

6

remain solid ice.

29.     Igloo has a puzzling definition of "ice retention," as illustrated below:[1]

"Ice retention" is the product's "level of cooling" measured in how many days it can retain ice. This is tested in controlled laboratory conditions by filling a cooler with a fixed amount of ice, closing the lid, and placing it in a 90-degrees-Fahrenheit oven to simulate a warm outdoor environment. The cooler's ice retention level is the amount of time (measured in days) that it takes for the ice to reach 39 degrees and begin to melt.

The way you use your cooler and the conditions you're in often vary, so the actual cooler performance may be different from our lab results.

30.     Igloo claims that "ice retention" is the amount of time that it takes ice to reach 39 degrees and begin to melt."   The ice begins to melt above 32 degrees Fahrenheit, not 39 degrees. When the ice reaches 39 degrees, it is no longer fully ice and Defendant's ice retention claim fails. Igloo's definition of ice retention seems to be 39-degree water temperature after all the ice has melted, not when "ice reach 39 degrees and begin to melt."   Presumably, Defendant was using ice filled to the capacity during testing.

31.     The consumers' definition of "ice retention" is when the original ice is fully non-functional and loses most of the ability to keep items chilled.   The ice cooler industry, including retail sellers, definition of "ice retention" is the amount of days it takes most or all of the ice to be melted into liquid starting from the ice filled to full capacity.[2]

32.     Defendant clearly and conspicuously has conveyed the message to consumers that the Product retains the ice for 3 to 7 days.

33.     Plaintiffs purchased the Product believing that the Defendant's claims regarding the quality and technology of the Products are truthful and accurate.   Defendant's misleading statement is labeled directly on the Product.   Defendant's deceptive product description and claim sends a false message to a reasonable consumer that the Product will retain ice for the promised

---

[1] *https://www.igloocoolers.com/pages/faq* - See "What is 'Ice retention' and how does igloo measure it?"
[2] https://www.youtube.com/watch?v=zu-V0ZqfYHg

period of time.

34.     In contrast, the high-end and highly regarded Yeti cooler which sells for about $ 350 does not make such claims.

35.     Yeti allows the quality of the product to convey the message for itself as shown below:



**PERMAFROST™ INSULATION**
Pressure-injected commercial-grade polyurethane foam in the walls and lid makes sure your ice stays ice.

36.     The consumers exposed to Defendant's claim, not only expect the ice cooler to retain ice for some period of time, they expect the food and beverage items to be chilled for the same period.     However, Defendant's claims are false.

37.     Defendant' claim fails under all definition of "ice retention."     Defendant's products will not retain ice for the claimed amount of time.    Most of the ice melts into liquid with pieces of ice floating in water.

38.     Defendant has known about their false claim for many years.     Numerous complaints have been lodged against Defendant directly and through other forums.     Below are some complaints that were lodged by the consumers on the internet:

★★☆☆☆   **Cooler is CRAP**

October 30, 2019

This is the second one of these coolers that I have bought, the first one lasted for about 20 years on a boat and was great, this one is CRAP. Put 60lb of ice in it on a 85° day and drove 80 miles and half the ice was melted, the cooler had condensation on the outside of it and the remaining ice lasted a day or so. DO NOT BUY THIS COOLER

 · a year ago

Not a 5-Day Cooler

Bought this cooler for a week long camping trip. Ended up having to replenish the ice every other day.

 It was advertised as being

It was advertised as being able to keep ice 5 days. I didn't even get 2 days.

 Dissatisfied with ice keeping .

Dissatisfied with ice keeping . 1 1/2 days max in 80 degrees.

★☆☆☆☆ 1  **Bmx**

Got the bmx, ice was melted in a day and a half. It was only 70° outside both days. This cooler is not good for the price

★☆☆☆☆ Anonymous · 2 months ago

## Not good

Bought the cooler because it said it would keep ice for 5 days ! Well 1 day 1 1/2 max would not recommend this cooler for camping

### Doesn't hold ice for 5 days like promised

We bought this cooler specifically to take with us camping. The cooler held our meat and other items that needed to be kept cold/frozen. We were there 5 days and needed to purchase ice 3 of those 5 days as the cooler did not keep the ice for 5 days as promoted when we purchased it.

★☆☆☆☆ Jlmorris006 · a year ago

### Get Something Different...

Doesn't keep ice longer than a day. Advertised 5 days (120hrs), which I knew wouldn't happen, but thought it would maybe be longer than a day. It wasn't. Regrettable purchase.

⭐ Travelcamel · a year ago

**Doesn't keep ice**

Just used it this past weekend for the first in Colorado. Weather was mixed rain and shine. Day one 3 bags this was around 1:00 pm Next day by 10:00 am ice was gone? 3 more bags by next morning gone? This was with rain and being in the shade? Checking with customer service to see if they forgot the insulation Bummer I really wanted this cooler.. most likely taking it back.

⭐⭐ G916 · a year ago

**Doesn't keep ice long**

Filled cooler with half cans half ice. Sitting inside an air conditioned house ice lasted 1 day. Size/mobility are great but this is only a 1 day ice chest. Expected more for the price.

39.     As illustrated above, numerous consumers complain of Defendant's misrepresentation of the ice retention claim.   None of the reviews support Defendant's ice retention claim.

40.     Even, *arguendo*, the definition of "ice' is assumed to be having traces of ice after claimed time period, Defendant's Product fails the test.

41.     Numerous YouTube bloggers performed an "Ice Challenge" to assess credibility of the claims.   An experiment was performed with Igloo Latitude 90 with 60 lbs. of ice.   The experiment was performed in September 2020 which is presumed to be relatively mild day with the estimated high and low temperature of 50 to 75 degrees.

42.     After 120 hours (5 days), the Igloo cooler had very little ice left in the cooler.[3] If the melted ice was not drained after each day, all the ice would have melted into water by end of the fifth day.

43.     Yet in another experiment, the YouTube blogger performed an ice retention test with Igloo Latitude 90 Quart Cooler costing $ 90.

---

[3]  https://www.youtube.com/watch?v=FZ93JiUTD1g – result available at 5:20 minute mark

44.     Defendant claims this particular cooler to retain ice for 5 days.   The test was performed at room temperature of 75-80 degrees.    After 5 days, all the ice had melted into water.[4] Numerous other "Ice Challenges" confirm failure of Defendant's claim.

45.     The experiments demonstrate that Defendant's claim is ice cold.   The Product does not live up to its claim.

46.     Under these circumstances, the Product falls far short of reasonable consumer's expectations.

47.     Based on Defendant's claim, a reasonable consumer would expect the ice to be functional for the claimed amount of time and not turn into water.

48.     The ice will never be functional for claimed period of time in Defendant's ice cooler under normal usage.

49.     If the food and beverage items were left in the cooler with ice for stated number of days, the items will be submerged in water.

50.     Therefore, Defendant's claims are false, materially misleading, and reasonably likely to deceive the public at large.

51.     As a result of Defendant's deceptive claims, Plaintiffs and the putative class have purchased the Products that do not perform as promised.   They were deprived of the benefit of the bargain and suffered monetary loss.

52.     Plaintiffs and the putative class have been and will continue to be deceived by Defendant's false claims.

53.     Based on the claims purported in the labelling, Defendant is able to price the Product at a premium over other products sold by their competitors.

---

[4]  https://www.youtube.com/watch?v=H19b2DzyBe4v – result available at 3:50 minute mark

54.     Defendant has reaped huge profits from false, misleading and deceptive marketing and sale of the Products.

55.     Plaintiffs brings this action to prevent the dissemination of false, misleading and deceptive advertising and obtain redress for those who have purchased the Products.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

57.     The proposed class consists of: All persons who purchased one or more Defendant's ice cooler that claimed "3 Day, 5 Day, 7 Day, or 120 Hour" ice retention, sold in the United States and its territories or possessions.[5]

58.     Plaintiffs also brings this suit on behalf of sub-classes consisting of purchasers of the Products in New York and New Jersey during the proposed class period.

59.     The members of the class are so numerous that joinder is impracticable.

60.     Plaintiffs' claims are typical of the claims of the entire class.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

62.     Plaintiffs have no interests antagonistic to those of other class members.

63.     Plaintiffs are committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

64.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class, including, but not limited to:

---

5  https://www.youtube.com/watch?v=K3l47v7fw3s – result available at 5:20 minute mark.

a.    Whether Defendant's advertising and labelling is false, deceptive, fraudulent and misleading;

b.    Whether the Products can retain ice for claimed period of time under normal use or the Products can retain ice for a claimed period of time under Defendant's definition of "ice retention.";

c.    Whether the defects in the product constitute material facts that reasonable purchasers would have considered in deciding whether to purchase them;

d.    Whether Defendant had breached warranties made to consumers regarding the Products;

e.    Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business at consumers, in violation of the New York General Business Law §§ 349 & 350 for the New York and New Jersey Subclass;

f.    Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, in violation of consumer protection laws in all other jurisdictions;

g.    Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product;

h.    Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained funds, restitution to, or other remedies for the benefit of the Class;

i.    Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendant from continuing to engage in the

fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

j.      Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or the multiplier to the actual or potential harm to the Class.

65.      Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

66.      Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

67.      Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

68.      Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)-New York Subclass**

69.      Plaintiffs incorporates by reference all preceding paragraphs.

70.      Plaintiffs Chung brings this claim on behalf of himself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law §§ 349 & 350 ("NY GBL §§ 349 & 350").

71.      NY GBL § 349 provides that deceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are unlawful.    NY GBL § 350 prohibit false advertising.    Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." New York GBL section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

72.     The practices employed by Defendant, namely Defendant's advertisement, promotion, and marketing materials that falsely claims the Products to retain ice for certain period of time are unfair, deceptive, and misleading and are in violation of NY GBL §§ 349 & 350.

73.     Defendant should be enjoined from marketing their Products as being "3, 5, 7 Day or 120 Hour Ice Retention" without further specification and proof as described above pursuant to NY GBL §§ 349 & 350.

74.     Plaintiffs on behalf of himself and all others similarly situated, respectfully demand a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL §§ 349 & 350, and such other relief as this Court deems just and proper.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350 and CONSUMER FRAUD ACT, N.J.S.A. §§ 56:8-1 *et seq*.

75.     Plaintiffs incorporate by reference all preceding paragraphs.

76.     Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL §§ 349 & 350 and N.J.S.A. §§ 56:8-1 *et seq.*, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce including advertising.

15

77.     The practices of Defendant described throughout this Complaint were specifically directed to consumers.

78.     Defendant's conduct is malicious, willful, wanton and outrageous such as to shock the conscience of the public and warrant imposition of punitive damages.

79.     Defendant's actions impact the public at large because Plaintiffs and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's deceptive conduct.

80.     By committing the acts alleged in this Complaint, Defendant has misled Plaintiffs and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have qualities that it does not have and will keep ice for claimed period of time. This is a deceptive business practice that violates the above-referenced consumer protection laws.

81.     Defendant's claims misled Plaintiffs and are likely in the future to mislead reasonable consumers. Had Plaintiffs and members of the Class known of the true facts about the Products' failure to work as promised, they would not have purchased the Products and/or paid substantially less for competing product.

82.     Defendant's violations proximately caused Plaintiffs and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Products, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III
## BREACH OF EXPRESS WARRANTY

83.     Plaintiffs incorporates by reference all preceding paragraphs.

84.     Defendant is, and at all times relevant was, a merchant and sold goods to Plaintiffs.

85.     Defendant made an affirmation of fact and promise about the quality of the goods

16

and made the following warranty statement:[6]

LIMITED WARRANTY. Igloo Products Corp. warrants its products to be free from defects in material or workmanship under normal use and service from the date of original purchase for the period listed on the chart below. This warranty is your exclusive warranty and there are no warranties which extend beyond the description on the face hereof. Igloo shall either repair the product free of charge or provide you with a replacement product if the product proves defective under the terms of this warranty. The warranty is valid for the original retail purchaser and is not transferable. Dealers, service centers, or retail stores do not have the right to change the terms and conditions of the warranty. Igloo is not responsible for incidental or consequential damage resulting from any malfunction. The warranty shall not apply to any product, or component thereof, which is not returned as stated below and/or which has been:

86.     Defendant expressly extended the warranty to the original retailer purchaser and warranted the product to be as follows:

        a. in good quality;

        b. generally fit for its intended purpose;

        c. merchantable; and

        d. free from defect.

87.     Plaintiffs relied upon Defendant's expressed warranties regarding its specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an unreasonable risk of harm or place an undue burden upon Plaintiffs.

88.     By selling the Products that did not perform as promised to consumers like Plaintiffs and the Class, after it gained knowledge of the defects, Defendant breached its expressed warranty to provide goods that were free from defects.

89.     The product, as sold, did not conform to the express warranties.

90.     At the time Defendant warranted and sold the goods, it knew that the goods did not conform to the warranties and were inherently defective. Defendant wrongfully and fraudulently misrepresented and concealed materials facts regarding its goods.

91.     Defendant was provided with notice, and has been on notice, of the defects and of

---

6  https://www.youtube.com/watch?v=K3l47v7fw3s – result available at 5:20 minute mark.

its breach of express written warranties through hundreds or thousands of consumer warranty claims and customer complaints.

92. Yet, Defendant failed to repair to ensure they were free of material defects or component malfunctions as Defendant promised.

93. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs suffered damages in an amount to be determined at trial.

## COUNT IV

## NEGLIGENT MISREPRESENTATION (All States)

94. Plaintiffs incorporates by reference all preceding paragraphs.

95. Defendant, directly or through their agents and employees, made false representations, concealments, and omissions to Plaintiffs and members of the Class.

96. Defendant has failed to fulfill their duties to disclose the material facts in making the representations to Plaintiffs and members of the Class.

97. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

98. Defendant knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

99. Plaintiffs and members of the Class would have acted differently had they not been misled. They would not have paid money, paid less money or purchased an alternative product.

100. Defendant has an obligation to correct the misinformation that was disseminated through their advertising of the Products. By not informing Plaintiffs and members of the Class,

Defendant breached their duty. Defendant also profited financially as a result of this breach.

101. Plaintiffs and members of the Class relied upon these false representations and omissions by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

102. Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, other consequential loses and any interest that would have been accrued on all those monies, the specific amount to be determined at trial.

103. Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

104. Plaintiffs and members of the Class are entitled to punitive damages.

<u>**COUNT V**</u>

<u>**FRAUD**</u>

105. Plaintiffs incorporate by reference all preceding paragraphs.

106. Defendant intentionally made materially false and misleading representations regarding the Products.

107. Plaintiffs and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that did not perform as claimed.

108. Defendant knew or should have known of their false and misleading labeling, misrepresentations and omissions. Nevertheless, Defendant continued to promote and market the products in a deceptive and misleading manner to induce customers to purchase the Product.

109. As a proximate result of Defendant's conduct, Plaintiffs and members of the Class

19

suffered damages in an amount to be determined at trial.

**COUNT VI**

**UNJUST ENRICHMENT**

110.     Plaintiffs incorporate by reference all preceding paragraphs.

111.     Defendant received proceeds from their sale of the goods, which were purchased by Plaintiffs and the Class for an amount far greater than the reasonable value because the Product did not work as promised.

112.     Plaintiffs and the Class reasonably believed that the Defendant's goods would function as advertised and warranted, and did not know, nor could have known, that the Product would not perform as promised at the time of purchase.

113.     Defendant knows of and appreciates the benefit conferred by Plaintiffs and the Class and has retained the benefit notwithstanding their knowledge that the benefit is unjust.

114.     It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and the Class given that products were not what Defendant purported them to be.

115.     It would be unjust and inequitable for Defendant to retain the benefit, warranting disgorgement to Plaintiffs and the Class of all monies paid for the products, and/or all monies paid for which Plaintiffs and the Class did not receive benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, pray for judgment as follows:

A.     Certifying the proposed Class as requested herein;

B.     Declaring that Defendant is financially responsible for notifying the Class

members of the pendency of this suit;

C.      Declaring that Defendant has committed the violations of law alleged herein;

D.      Providing for any and all injunctive relief the Court deems appropriate;

E.      Awarding statutory damages in the maximum amount for which the law provides;

F.      Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.      Providing for any and all equitable monetary relief the Court deems appropriate;

H.      Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.      Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J.      Awarding pre- and post-judgment interest to the extent the law allows; and

K.      For such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:    October 13, 2020

*/s/ Spencer Sheehan*
SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

JAMES CHUNG, ESQ.

21

Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

*Attorneys for Plaintiffs*

1:20-cv-04926
United States District Court
Eastern District of New York

David Chung, Steven Hargrove, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Igloo Products Corp.,

Defendant

# Complaint

```
        Sheehan & Associates, P.C.
         60 Cuttermill Rd Ste 409
         Great Neck NY 11021-3104
            Tel: (516) 268-7080
            Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 13, 2020

/s/ Spencer Sheehan
Spencer Sheehan