Clerk's Office
Filed Date:  7/8/22

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

DAVID CHUNG and STEVEN HARGROVE,
*individually and on behalf of all others similarly
situated*,

                Plaintiffs,

        v.

IGLOO PRODUCTS CORP.,

                Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-4926 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs David Chung and Steven Hargrove commenced the above-captioned putative

class action on October 13, 2020, against Defendant Igloo Products Corp. ("Igloo"), alleging that

the portable ice coolers manufactured by Defendant do not retain ice as marketed, advertised,

and promoted.  (Compl. ¶ 1, Docket Entry No. 1.)  Plaintiffs allege that Defendant violated the

New York General Business Law (the "GBL"), N.Y. Gen. Bus. Law §§ 349 and 350; the New

Jersey Consumer Fraud Act (the "CFA"), N.J. Stat. Ann. §§ 56:8–1 *et seq.*; and assert claims for

breach of express warranty, negligent misrepresentation, fraud, and unjust enrichment under

common law.  (*Id.* ¶¶ 69–115.)  Plaintiffs seek injunctive relief, damages, and attorneys' fees and

costs.  (*Id.* at 20–21.)

Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure and for lack standing pursuant to Rule 12(b)(1)

and Plaintiffs oppose the motion.[1]  For the reasons set forth below, the Court grants Defendant's

motion and dismisses Plaintiffs' claims without prejudice.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes

of this Memorandum and Order.

### a.   Factual background

Defendant manufactures, markets, and sells portable ice coolers throughout the United

States with various "ice retention" claims.  (*Id.* ¶¶ 22, 25–27.)  It defines ice retention as "the

amount of time that it takes ice to reach 39 degrees and begin to melt."  (*Id.* ¶ 30.)  Defendant

sells a line of coolers that claim, "3 Day," "5 Day," "7 Day," or "120 Hour" ice retention and

include clarifying language that states the coolers retain ice "Under Controlled Conditions in 90

degrees constant."  (*Id.* ¶ 27.)  The prices of the ice coolers range from $20.00 to $250.00.  (*Id.*

¶ 26.)

Plaintiffs focus on Defendant's manufacture of an Igloo Latitude 90-quart cooler (the

"Product") that Defendant claims retains ice for 120 hours.  (*Id.* ¶¶ 11–12, 15.)  The Product's

---

[1]  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No.18; Def.'s Mem. in Supp. of
Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 18-1; Def.'s Reply Mem. in Supp. of Def.'s Mot.
("Def.'s Reply"), Docket Entry No. 18-8; Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n"), Docket
Entry Nos. 17, 18-7.)

label specifies that it retains ice in: "**5 DAYS IN 32°C (90°f) HEAT.  CONTINUOUS HEAT UNDER CONTROLLED CONDITIONS.**"[2]  (*See id.* ¶ 27.)



---

[2] Defendant requests that the Court take judicial notice of an image of the Product's label.  In deciding motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) ("Under Federal Rule of Evidence 201, a 'court may judicially notice a fact that is not subject to reasonable dispute.' 'Such facts must either be (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (citation omitted) (first quoting Fed. R. Evid. 201(b); and then quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998))).  The Product's label is referenced in the Complaint, (*see* Compl. ¶ 27), the information is generally known within the territorial jurisdiction of the trial court, and Plaintiffs do not dispute that the Court can take judicial notice of the image offered by Defendant because it provides a "clearer image of the [clarifying language]," (Pls.' Opp'n 6).  The Court therefore considers the image of the Product label.  (*See* Product Label, annexed to Decl. of Josh Militello in Supp. of Def.'s Mot. as Ex. A, Docket Entry No. 18-2.)

(*See id.*)  The Product also carries an express Limited Warranty guaranteeing that it will "be free from defects in material or workmanship."[3]  (*Id.* ¶¶ 85–86.)  The Limited Warranty claims to be the "exclusive warranty" offer to "repair the product free of charge or provide [the consumer] with a replacement product if the product proves defective."  (*Id.* ¶ 85.)

Chung, a citizen of the State of New York, purchased the Product for personal use after seeing its 120-hour ice retention claim.  (*Id.* ¶¶ 10–12.)  Chung paid forty-nine dollars for the Product and used it for fishing, travel, and picnics mostly in temperatures ranging between seventy to ninety degrees Fahrenheit.  (*Id.* ¶ 12.)  He initially placed thirty to forty pounds of ice in the cooler and claims that the ice was retained for a maximum of two days while draining the water every few hours.  (*Id.*)  Chung had to replenish the ice in order to keep fresh food from spoiling on fishing trips or during long-term travel.  (*Id.* ¶ 13.)

Hargrove, a citizen of New Jersey, purchased the Product for personal use after seeing its 120-hour ice retention claim.  (*Id.* ¶ 14.)  Hargrove paid sixty dollars for the Product and used it for fishing, picnics, and barbeques mostly in temperatures ranging between eighty to ninety degrees Fahrenheit.  (*Id.* ¶ 15.)  On long fishing trips, he packs three to four bags of ice in the

---

[3]  The Limited Warranty in relevant part states:

> LIMITED WARRANTY.  Igloo Products Corp. warrants its products to be free from defects in material or workmanship under normal use and service from the date of original purchase for the period listed on the chart below.  This warranty is your exclusive warranty and there are no warranties which extend beyond the description on the face hereof.  Igloo shall either repair the product free of charge or provide you with a replacement product if the product proves defective under the terms of this warranty.  The warranty is valid for the original retail purchaser and is not transferable.  Dealers, service centers, or retail stores do not have the right to change the terms and conditions of the warranty. Igloo is not responsible for incidental or consequential damage resulting from any malfunction.

(Compl. ¶ 85.)

cooler and on the way home adds another two to three bags of ice in the cooler.  (*Id.* ¶ 16.)

However, the cooler is mostly water with some pieces of ice floating in it by the time he returns

home.  (*Id.*)  When he uses the cooler for a barbeque or picnic, he notices that most of the ice

melts into water by late afternoon.  (*Id.* ¶ 17.)

      Plaintiffs expected the Product to last for 120 hours based on the representations made by

Defendant but claim that the Product does not retain ice for the amount of time advertised.  (*Id.*

¶¶ 18, 37.)  They assert that Defendant, despite knowing that their ice coolers did not retain ice

for the specified period, continued to represent the Product's quality and fitness and continued to

warrant that the units were "free from defects in materials and workmanship."  (*Id.* ¶ 85.)

Plaintiffs contend that other customers have complained to Defendant that the coolers do not

perform as promised.  (*Id.* ¶ 38.)  For example, on October 30, 2019, an internet reviewer

claimed that they "[p]ut [sixty]lb[s] of ice in [one of Defendant's coolers] on a[n] [eighty-five

degree] day and drove [eighty] miles and half [of] the ice was melted, the cooler had

condensation on the outside of it and the remaining ice lasted a day or so."  (*Id.*)  Other reviewers

claimed that the cooler "was advertised as being able to keep ice for [five] days . . . [but the

consumer] didn't even get [two] days" and that they "bought the cooler because it said it would

keep ice for [five] days . . . [but the ice only lasted] [one] day[,] [one and a half] max."  (*Id.*)

Several reviews stated that Defendant's ice coolers failed to function as advertised.  (*Id.*)

Plaintiffs also refer to several "experiments" conducted by consumers who purchased the

Product, in which the Product failed to retain ice for the promised period.  (*Id.* ¶¶ 41–47.)

      **b.   Procedural background**

      On October 13, 2020, Plaintiffs commenced this class action alleging deceptive and

unfair business practices in violation of several consumer protection laws, including the New

York GBL and the New Jersey CFA, and also asserting claims for breach of express warranty, negligent misrepresentation, fraud, and unjust enrichment under common law.  (*Id.* ¶¶ 69–115.) Plaintiffs seek to bring this suit on behalf of all persons in the United States who purchased one or more of Defendant's ice coolers that claimed "3 Day, 5 Day, 7 Day, or 120 Hour" ice retention.  (*Id.* ¶ 57.)  In addition to damages, Plaintiffs seek injunctive relief and attorneys' fees and costs.  (*Id.* ¶¶ 20–21.)

Defendant moves to dismiss the Complaint for lack standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim pursuant to Rule 12(b)(6), and Plaintiffs oppose the motion.  (*See generally* Def.'s Mot.; Def.'s Mem.; Pls.' Opp'n.)

## II. Discussion

### a. Standards of review

#### i. 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it."  *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).  "'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def.*

*Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.   12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106, 107 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

a.   **Plaintiffs lack standing to seek injunctive relief**

Defendant argues that Plaintiffs lack Article III standing to pursue injunctive or

declaratory relief because they cannot demonstrate a risk of future harm.  (Def.'s Mem. 21–23.)

Plaintiffs contend that they have standing to pursue injunctive relief because they are

unable to rely on Defendant's labeling in the future, which will cause them to avoid purchasing

the Product, even though they would like to.  (Pls.' Opp'n 23.)

To show Article III standing, a plaintiff must establish three things, one of which is

"injury in fact — an invasion of a legally protected interest which is . . . concrete and

particularized and . . . actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted).  A plaintiff

"seeking injunctive relief must also prove that the identified injury in fact presents a 'real and

immediate threat of repeated injury.'"  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187

(2d Cir. 2013) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)); *Marcavage v. City of*

*New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("In establishing a certainly impending future injury,

. . . the plaintiff must establish how he or she will be injured prospectively and that the injury

would be prevented by the equitable relief sought."); *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp.

3d 211, 222 (E.D.N.Y. 2015) ("In seeking prospective relief like an injunction, 'a plaintiff must

show that he can reasonably expect to encounter the same injury again in the future — otherwise

there is no remedial benefit that he can derive from such judicial decree.'" (quoting *MacIssac v.*

*Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y. 2011)), *aff'd*, 630 F. App'x 61 (2d

Cir. 2015))); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("Because

respondent alleges only past infractions . . . , and not a continuing violation or the likelihood of a

future violation, injunctive relief will not redress its injury."); *Salu v. Miranda*, 830 F. App'x

341, 347 n.2 (2d Cir. 2020) (finding that injunctive relief was not warranted when the plaintiffs

did not allege a probable threat that they would face their asserted cause of injury again);

*Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) ("Appellants failed

to plead a sufficient likelihood that, under the revised policy, any of them faces a substantial risk

of suffering a future injury." (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 106–07 (1983))).

"Although past injuries may provide a basis for standing to seek money damages, they do not

confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to

be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239

(2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir.

1998)). The alleged injury "must be 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015)

(quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *see also Holcombe v.

Ingredients Sols., Inc.*, 797 F. App'x 630, 632 (2d Cir. 2020) ("[A] plaintiff must show that . . .

she suffered an 'injury in fact' that is concrete and particularized . . . ." (quoting *Lujan*, 504 U.S.

at 560–61)); *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The

Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to

constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient.'"

(alteration in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013))). "[A]t

the pleading stage, standing allegations need not be crafted with precise detail, nor must the

plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003)

(citing *Lujan*, 504 U.S. at 561).

  The Second Circuit has explained that "past purchasers of a consumer product who claim

to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni v.*

*Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).  Accordingly, "past purchasers of a product . . .

are not likely to encounter future harm of the kind that makes injunctive relief appropriate."  *Id.*;

*cf. Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (noting that

because the plaintiffs in a false advertisement case have necessarily become aware of the alleged

misrepresentations, "there is no danger that they will again be deceived by them" (quoting *Elkind

v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May

14, 2015))).

   Plaintiffs allege that they "may consider future purchase if Defendant engages in

corrective labeling and advertising."  (Compl. ¶ 21.)  By their own admission, Plaintiffs would

purchase the Product again only if Defendant changes its labeling.  Thus, there is no risk that

Plaintiffs would purchase the Product with the current label because it is purportedly deceptive

and, therefore, Plaintiffs cannot show an imminent risk of future deception and injury.

*Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 274–75 (E.D.N.Y. 2021)

("Because [the] plaintiff knows that the [consumer products] are allegedly [deceptively labelled]

and that she will not purchase the [p]roducts in their current state, she cannot show an imminent

risk of future deception and injury.").  Any potential "future injury is merely conjectural or

hypothetical" because even if Plaintiffs purchased the Product again, they would do so "with

exactly the level of information" that they possessed from the outset of this suit, and accordingly

would not be deceived or harmed.  *Berni*, 964 F.3d at 147–48 ("[P]ast purchasers of a consumer

product who claim to be deceived by that product's packaging . . . have, at most, alleged a past

harm."); *see Grossman*, 516 F. Supp. 3d at 274–76 (rejecting the plaintiff's contention that

inability to rely on a product's label and advertising constitutes imminent and future injury and

finding that the plaintiff lacked standing to seek injunctive relief where the plaintiff alleged that

products were deceptively labelled as "natural" and that if the defendants either change the labeling or ingredients she would purchase the products again); *Valcarel v. Ahold U.S.A., Inc.*, --- F. Supp. 3d ---, ---, 2021 WL 6106209, at *10 (S.D.N.Y. Dec. 22, 2021) (finding that the plaintiff, who alleged that "she is unable to rely on the accuracy of the product's front label in the future, which causes her to avoid purchasing the product, even though she would otherwise like to do so," lacked standing to seek injunctive relief under *Berni*); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) (collecting cases and rejecting the plaintiff's argument that she would purchase that product if she "could trust the label"); *Ashour v. Ariz. Beverages USA LLC*, No. 19-CV-7081, 2020 WL 5603382, at *4 (S.D.N.Y. Sept. 18, 2020) (finding no standing for injunctive relief where the plaintiff alleged that he would purchase the products if he "could rely upon the truthfulness of [the] [d]efendants' labeling").

Accordingly, the Court finds that Plaintiffs fail to demonstrate any imminent future injury and thus lack standing to seek injunctive relief.

### b.   Plaintiffs properly allege class standing

Defendant argues that Plaintiffs cannot represent "all persons who purchased one or more of Defendant's ice coolers that claimed, '3 Day, 5 Day, 7 Day, or 120 Hour' ice retention" because Plaintiffs only purchased the 90-Quart Latitude model and cannot assert claims relating to products that they did not purchase.  (Def.'s Mem. 23.)  In support, Defendant argues that Plaintiffs' request to represent purchasers of other Igloo products are not viable because Defendant offers "a broad spectrum of Igloo coolers, all of which have different features, different ice retention ratings, and different labels and disclosures."  (*Id.* at 23–24.)

Plaintiffs argue that it is premature to evaluate their class standing and that Defendant conflates Article III standing with class certification requirements and class standing should be

11

deferred until class certification.  (Pls.' Opp'n 24.)  In addition, Plaintiffs assert that all ice coolers have substantially similar misrepresentations on their labels, were all tested at the same laboratory setting, and all fail to perform as represented.  (*Id.*)

The Second Circuit has clarified that Article III standing and class standing are distinct. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) [hereinafter *NECA-IBEW* ](stating that "the class standing analysis is different" from the Article III standing analysis); *see also Brown v. Daikin Am., Inc.*, No. 18-CV-11091, 2021 WL 1758898, at *3 (S.D.N.Y. May 4, 2021) ("[I]n the context of a class action lawsuit, plaintiffs must also establish 'class standing' — that is, standing to litigate the claims of the absent class."); *Reid v. GMC Skin Care USA Inc.*, No. 15-CV-277, 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016) ("Article III standing and class standing are different issues that require separate consideration; class standing is often considered at the class certification stage of the litigation." (collecting cases)); *Martinez v. Cap. One Bank, N.A.*, No. 10-CV-8028, 2015 WL 4270172, at *3 (S.D.N.Y. July 13, 2015) ("[T]he Second Circuit considers the questions of Article III, statutory, and class standing as distinct." (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 481 (S.D.N.Y. 2014))).

 "[T]o establish Article III standing in a class action[,] for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Liberian Cmty. Ass'n of Conn.*, 970 F.3d at 185 n.14 (alteration omitted) (quoting *NECA-IBEW*, 693 F.3d at 159); *Gold v. Eva Nats., Inc.*, --- F. Supp. 3d ---, ---, 2022 WL 566230, at *3 (E.D.N.Y. Feb. 16, 2022) (same); *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 540, 553 (S.D.N.Y. 2016) ("In the class action context, Article III standing requires that 'for

every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant.'" (first quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2012); and then citing *NECA-IBEW*, 693 F.3d at 159)).  In *NECA-IBEW*, the Second Circuit explained that the named plaintiff, NECA-IBEW, had Article III standing because it plausibly alleged an injury against it by the defendant, despite the fact that NECA-IBEW also sought to bring claims on behalf of putative class members that NECA-IBEW "lack[ed] [Article III] standing to assert on its [own] behalf."  *NECA-IBEW*, 693 F.3d at 158.

Defendant does not contest that Plaintiffs have individual Article III standing to assert claims as to the Products.  (*See* Def.'s Mem. 23–24.)  Because the named Plaintiffs have standing to assert a claim directly against Defendant, Plaintiffs have satisfied the Article III standing requirement for class actions.  *See NECA-IBEW*, 693 F.3d at 159 (stating that in order to establish Article III standing in a class action there must be a named plaintiff who can assert a claim directly against every named defendant); *Catalano*, 167 F. Supp. 3d at 553 (same). Moreover, based on the Second Circuit's clear pronouncement of Article III standing in *NECA-IBEW*, Plaintiffs have no further burden to demonstrate Article III standing.  Plaintiffs have sufficiently stated a cognizable injury by Defendant — that they were misled into purchasing a product that failed to perform as advertised — and have therefore established Article III standing.  *Atik v. Welch Foods, Inc.*, No. 15-CV-5405, 2016 WL 5678474, at *7 (E.D.N.Y. Sept. 30, 2016) (finding that the plaintiff had standing to assert a claim directly against each of the named defendants, thus the plaintiff satisfied the Article III standing requirement for class actions).  In addition, Plaintiffs have alleged that the misrepresentations on the labels of the ice coolers (both purchased and unpurchased) are "sufficiently similar," which is

sufficient to support Plaintiffs' class claims at this stage of the litigation.  *See NECA-IBEW*, 693 F.3d at 164; *Gold*, --- F. Supp. 3d at ---, 2022 WL 566230, at *3 (denying motion to dismiss for lack of class standing where "even though the plaintiff did not purchase each of the products at issue, the 'nature and content of the specific misrepresentation[s] alleged' are sufficiently similar" to the products that the named plaintiff did purchase (alteration in original) (citations omitted)); *Grossman*, 516 F. Supp. 3d at 276–77 ("[S]ubject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." (quoting *Daniel v. Tootsie Roll Indus., LLC*, No. 17-CV-7541, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018))).  *But see DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (finding that a plaintiff who purchased three out of seven cosmetic products lacked class standing because the defendant "made different advertising claims for each product"); *see also Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *12 (E.D.N.Y. Sept. 22, 2015) ("While 'Article III standing is generally a prerequisite to class certification,' '[a]t this preliminary stage of the litigation, the only relevant standing inquiry is that of the named plaintiffs.'" (alteration in original) (first quoting *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, No. 11-CV-8066, 2013 WL 6508843, at *5 n.3 (S.D.N.Y. Dec. 12, 2013); and then quoting *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010))).[4]

---

[4] Defendant's reliance on *DiMuro v. Clinique Laboratories, LLC*, 572 F. App'x 27 (2d Cir. 2014) is unavailing.  There, the Second Circuit affirmed a district court's dismissal of class action claims related to unpurchased products because the plaintiffs only alleged to have purchased and used three of the seven products and "each of the seven different products ha[d]

Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claims for lack of class standing arising from unpurchased products.

### c.   Consumer protection claims

Defendant argues that Plaintiffs "lack standing" to bring consumer protection claims under the New York GBL because they have not alleged *where* they purchased the Product.[5] (Def.'s Mem. 24–25.)  As to the merits of the consumer protection claims, Defendant argues that Plaintiffs have not sufficiently pled these claims because a reasonable consumer would not likely be deceived or misled by the Product's marketing and advertising.  (*Id.* at 9–13.)  In support of the merits argument, Defendant asserts that the Product label states, "up to 120 hours," which puts reasonable consumers on notice that the Product will not necessarily keep ice frozen for at least 120 hours, (Def.'s Reply 4), and the label contains clarifying language explaining that the Product's performance is only guaranteed in controlled, laboratory conditions, (*id.* at 5). Defendant also argues that Plaintiffs cannot show an ascertainable loss as required by the CFA when the Product includes an explicit disclaimer of its limits.  (Def.'s Mem. 11.)

Plaintiffs concede that the Product contains the clarifying language.  (Compl. ¶ 27; Pls.' Opp'n 2.)  However, Plaintiffs contend that the "up to" language is deceptive because reasonable consumers would interpret it to mean the product would "likely" perform at the maximum level

---

different ingredients, and [the defendant] made different advertising claims for each product." The Court found that the alleged misrepresentations on the labels of unpurchased products would require entirely unique evidence to prove that the products were false and misleading.  *Id.* at 29. *DiMuro* is distinguishable because, for the reasons noted above, the Product and Defendant's other ice coolers contain substantially similar "advertising claims" and raise "nearly identical" concerns regarding the validity of Defendant's ice retention representation.  *Id.* (quoting *NECA-IBEW*, 693 F.3d at 163).

[5]  Plaintiffs do not address Defendant's standing argument in their briefing.  (*See generally* Pls.' Opp'n.)

"in normal usage" and, under normal conditions, the Product cannot retain ice for 120 hours. (Pls.' Opp'n 8–9.)  Plaintiffs also contend that Defendant's clarifying language is inconspicuous and therefore ineffective to cure this misrepresentation.  (*Id.* at 9–10.)  In response to Defendant's argument that they cannot show injury, Plaintiffs argue that the premium price they paid for the Product is a sufficient injury and that "had [they] known the cooler would not perform as represented, they would not have paid a premium price for them and would have purchased other, less expensive coolers."  (*Id.* at 14; Compl. ¶¶ 19, 53.)

### i.   New York GBL §§ 349 and 350

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349.  GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350.  "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims."  *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 & n.1 (2002)); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (recognizing that GBL section 350 is analyzed under the same "reasonable consumer" standard as section 349).  To assert a claim under either section, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1)

16

consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury

as a result of the allegedly deceptive act or practice.'" (citing *Koch v. Acker, Merrall & Condit*

*Co.*, 8 N.Y.3d 940, 944 (2012))); *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10 (2020) ("We have

explained that, to state a claim under sections 349 or 350, 'a plaintiff must allege that a defendant

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the]

plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (quoting *Koch*, 18

N.Y.3d at 941)).

   "[I]n determining whether a reasonable consumer would have been misled by a particular

advertisement, context is crucial" and, "under certain circumstances, the presence of a disclaimer

or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*,

714 F.3d 739, 742 (2d Cir. 2013) (collecting cases); *see also Mantikas v. Kellogg Co.*, 910 F.3d

633, 636 (2d Cir. 2018) (considering both large and small print in advertisement in dismissing

consumer protection claims); *Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451, 2021 WL

3501203, at *12 (S.D.N.Y. Aug. 9, 2021).  However, the mere inclusion of an accurate

disclaimer does not necessarily cure other potentially misleading statements or representations

set forth in a label or advertisement.  *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F.

Supp. 3d 467, 478–81 (S.D.N.Y. 2014) (holding that, where the defendant's trademark and

advertising "exclusively tout[ed]" the natural ingredients in its "Active Naturals" personal care

products, the disclosure of synthetic ingredients on the products' back label did not, as a matter

of law, preclude a reasonable consumer from being misled); *Hughes v. Ester C Co.*, 930 F. Supp.

2d 439, 463–65 (E.D.N.Y. 2013) (denying dismissal of claims against vitamin manufacturer and

its corporate parent based on allegedly misleading statements that the plaintiffs claimed created

expectation that products were an immune system defense because, "[a]t this early stage of the

litigation, it cannot be determined whether a disclaimer on the back of . . . [the] products, stating

that it is 'not intended to diagnose, treat, or prevent any disease,' eliminates the possibility of a

reasonable consumer being misled into thinking . . . [the allegedly misleading statements]

signified a cold or flu prevention product").  Rather, the significance of a disclaimer depends

upon factors such as the font size and placement of the disclaimer as well as the relative

emphasis placed on the disclaimer and the allegedly misleading statement.  *See Koenig v.*

*Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287–88 (S.D.N.Y. 2014) (holding that disclosure did

not, as a matter of law, cure alleged misrepresentation because "a reasonable consumer might . . .

focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk

and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the

carton or the nutrition label"); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014

WL 4773991, at *9 (E.D.N.Y. Sept. 24, 2014) (holding that disclosures were "not conspicuous

or prominent enough to necessarily cure" alleged misrepresentation and declining to grant

dismissal on basis of reasonable consumer prong).

Further, there is a "territorial" element to claims under sections 349 and 350.  The New

York Court of Appeals has interpreted the limiting phrase "in this state" in sections 349 and 350

to require that "the transaction in which the consumer is deceived must occur in New York."

*Goshen*, 98 N.Y.2d at 324; *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013)

(recognizing that a plaintiff stated a claim under sections 349 and 350 if "some part of the

underlying transaction . . . occurred in New York" (quoting *Mountz v. Glob. Vision Prods., Inc.*,

770 N.Y.S.2d 603, 608 (Sup. Ct. 2003))); *McVetty v. TomTom N. Am., Inc.*, No. 19-CV-4908,

2021 WL 965239, at *3 (S.D.N.Y. Mar. 13, 2021); *Horn v. Med. Marijuana, Inc.*, 383 F. Supp.

3d 114, 128 (W.D.N.Y. 2019) ("Sections 349 and 350 are not intended to regulate New York

businesses or protect New York residents solely on the basis of their residency; they are intended to police consumer transactions that 'take place in New York State,' regardless of the residency of the parties." (quoting *Goshen*, 98 N.Y.2d at 325)), *modified on reconsideration*, No. 15-CV-701, 2019 WL 11287650 (W.D.N.Y. Nov. 21, 2019); *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 416 (S.D.N.Y. 2018) (dismissing claims arising under GBL sections 349 and 350 because there were no allegations that the alleged deceptive transaction involving plaintiff occurred in New York); *see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York." (citing *Goshen*, 98 N.Y.2d at 325)); *Goshen*, 98 N.Y.2d at 325 ("[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.").

Plaintiffs fail to adequately allege that the Product's ice retention claim could deceive a reasonable customer.  Plaintiffs allege that Defendant holds itself out to have unique or specialized knowledge concerning the Product and that they "paid a premium price" for the Product due to its label stating that it could retain ice for 120 hours.  (Pls.' Opp'n 20; Compl. ¶¶ 5, 19, 87.)  However, the Product's label specifies that it may only retain ice for "up to" 120 hours, (Compl. ¶ 27), and directly below this — in a bold orange graphic — the label includes additional language that states that the ice retention claim is only valid in continuous heat under controlled conditions, (*see id.*; Product Label).  The Court finds that the "up to" phrase, together with the conspicuous language clarifying the conditions under which the ice retention claim would be valid, notifies a reasonable consumer that it will only achieve the advertised 120-hour retention claim under specific conditions.  *See Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022) (dismissing the plaintiff's GBL section 349 and 350

claims finding that a reasonable consumer would not interpret an ice cooler's label that states

that it "retains ice for *up to* 5 days at 90 degrees Fahrenheit under test conditions" to mean that

the ice cooler retains ice for at least 5 days at 90 degrees Fahrenheit with normal use); *Davis v.*

*Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) ("If a plaintiff alleges that

an element of a product's label is misleading, but another portion of the label would dispel the

confusion, the court should ask whether the misleading element is ambiguous.  If so, the

clarification can defeat the claim."); *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283–84

(S.D.N.Y. 2011) ("[The] [d]efendant's representations as to the speed of its Internet service are

qualified by the phrase 'up to,' which would lead a reasonable consumer to expect that speeds

could be less than the advertised '3x faster' and '100x faster.'"), *aff'd*, 714 F.3d 739, 741 (2d

Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement would not have misled a reasonable consumer." (citations omitted));

*Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007) (holding that a reasonable

consumer would not be misled into believing that a concert was guaranteed to take place as

scheduled where the ticket stated, "DATE & TIME ARE SUBJECT TO CHANGE").

Therefore, Plaintiffs fail to sufficiently allege claims for violations of GBL sections 349 and 350

because no reasonable consumer would view the Product's labels as misleading.

      In addition, Plaintiffs fail to meet the territorial requirement of GBL sections 349 and 350

because they fail to allege that the allegedly deceptive transactions involving Plaintiffs occurred

in New York.  Plaintiffs have not alleged that they purchased the Product in New York or viewed

the allegedly deceptive and misleading labels in New York.  *Horn*, 383 F. Supp. 3d at 128

(concluding that GBL sections 349 and 350 did not apply to the plaintiffs' deceptive business

practices and false advertising claims because the deceptive transaction did not occur in New

York); *see also Sharpe v. Puritan's Pride, Inc.*, No. 16-CV-6717, 2019 WL 188658, at *3–4 (N.D. Cal. Jan. 14, 2019) ("The Court of Appeals expressly rejected the theory that the GBL applies to deceptive statements that merely emanated from New York; it is the place where the consumer viewed and acted on them that matters. . . . Consequently, [the] plaintiffs cannot state a claim under the GBL for purchases made outside of New York.").  While Plaintiffs allege that Chung is a New York resident, and that he purchased the Product, this is insufficient to state a claim.  *McVetty*, 2021 WL 965239, at *3 ("The fact that [the] plaintiff is a citizen of New York is insufficient because the 'General Business Law analysis does not turn on the residency of the parties.'" (quoting *Goshen*, 98 N.Y.2d at 325)); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020) (finding a lack of standing under GBL section 349 where "the transactions ha[d] no locus in New York beyond the [d]efendants' residency").

Accordingly, the Court dismisses Plaintiffs' New York GBL claims.[6]

### ii.    New Jersey CFA

The CFA makes it unlawful for any person to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise or real estate."  *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 51 (2017) (quoting N.J. Stat. Ann. § 56:8–2); *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 27 F.4th 886, 889 (3d Cir. 2022) (recognizing that the CFA "prohibit[s] 'any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the

---

[6]  Defendant also argues that Plaintiffs lack standing to bring claims in New Jersey because they have not alleged that they purchased the Product in that state.  (Def.'s Mem. 24–25.)  However, the New Jersey consumer protection laws do not appear to have the same territoriality requirement as New York and Defendant does not provide any law that holds otherwise.  The Court therefore separately reviews Plaintiffs' claim under the New Jersey CFA.

knowing concealment, suppression, or omission of any material fact'" (quoting N.J. Stat. Ann.
§ 56:8–2)).  "To constitute consumer fraud . . . the business practice in question must be
'misleading' and stand outside the norm of reasonable business practice in that it will victimize
the average consumer . . . ."  *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No.
08-CV-939, 2009 WL 2940081, at *7 (quoting *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J.
Super. 105, 115 (App. Div. 2005)).  "Stating a claim under the []CFA requires: '(1) unlawful
conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful
conduct and the plaintiff's ascertainable loss.'"  *Hoffman v. Nissan Infiniti LT*, 840 F. App'x 694,
695 (3d Cir. 2021) (quoting *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck
& Co.*, 192 N.J. 372, 389 (2007) (per curiam)); *Zaman v. Felton*, 219 N.J. 199, 222 (2014)
(same); *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (same).

     "The New Jersey Supreme Court interprets ascertainable loss under the NJCFA to require
a 'quantifiable or measurable' injury and 'not [a] hypothetical or illusory' harm."  *Hoffman*, 840
F. App'x at 695 (alteration in original) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 183
N.J. 234 (2005)).  "[A]scertainable loss 'includes more than a monetary loss and may occur
when a consumer receives less than what was promised.'"  *Gengo v. Jets Stadium Dev. LLC*, 776
F. App'x 86, 88 (3d Cir. 2019) (quoting *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 249
(D.N.J. 2008)); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 501–02 (D N.J. Mar. 18,
2009) ("[A]scertainable loss . . . has been broadly defined as embracing more than a monetary
loss.  An ascertainable loss occurs when a consumer receives less than what was promised."
(quoting *Union Ink Co. v. AT & T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002))).  Courts
have identified two relevant theories to ascertain losses under the CFA:

          (1) the out-pocket-loss theory, and (2) the loss-in-value or
          benefit-of-the-bargain theory.  An out-of-pocket-loss theory would

suffice only if the product received was essentially worthless. A
benefit-of-the-bargain theory requires that the consumer be misled
into buying a product that is ultimately worth less than the product
that was promised.

*Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. Aug. 26, 2015) (first

citing *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. June 16, 2014); and then citing

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. Mar. 23, 2011)); *see DiCicco v.

PVH Corp.*, No. 19-CV-11092, 2020 WL 5237250, at *5 (S.D.N.Y. Sept. 2, 2020) ("In actions

alleging product misrepresentation, a plaintiff may show ascertainable loss by demonstrating

either that he suffered an 'out-of-pocket loss' or that he failed to receive the 'benefit of the

bargain' . . . [by] purchasing a product that [was] 'ultimately worth less than the product that was

promised.'" (first quoting *Annecharico v. Raymour & Flanigan*, No. 16-CV-1652, 2016 WL

7015615, at *7 (D.N.J. Nov. 30, 2016); and then quoting *Mladenov*, 124 F. Supp. 3d at 375)). To

survive a motion to dismiss, a plaintiff must allege "(1) a reasonable belief about the product

induced by a misrepresentation; and (2) that the difference in value between the product promised

and the one received can be reasonably quantified." *Smajlaj*, 782 F. Supp. 2d at 99. Moreover,

under the benefit-of-the-bargain theory, plaintiffs are required to specify the price paid for the

product and the price of comparable products. *See, e.g.*, *Lieberson v. Johnson & Johnson

Consumer Cos.*, 865 F. Supp. 2d 529, 541–42 (D.N.J. 2011) ("The [c]ourt finds that absent any

specific information concerning the price of the [p]roducts or the price of any comparable

products, [the] [p]laintiff's allegations concerning the ascertainable loss are nothing more than

unsupported conclusory statements that are insufficient to withstand a motion to dismiss."); *Green

v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) (same); *see also

Smajlaj*, 782 F. Supp. 2d at 99 ("[W]hat New Jersey [c]ourts require for that loss to be

'ascertainable' is for the consumer to quantify the difference in value between the promised

23

product and the actual product received.").  "Failure to quantify this difference in value results in the dismissal of a claim."  *Smajlaj*, 782 F. Supp. 2d at 101.

Plaintiffs do not sufficiently plead ascertainable loss under either the "loss-in-value" theory or the "benefit-of-the-bargain" theory.  (Compl. ¶ 51.)  Plaintiffs allege that, prior to purchasing the Product, Hargrove read the Product's label stating that it would retain ice for 120 hours.  (*Id.* ¶ 15.)  Hargrove purchased the Product for sixty dollars excluding tax, which he alleges is a premium price in reliance on the labeling, (*id.* ¶¶ 14–15, 53), and he further contends that he would not have purchased the Product but for the misrepresentations, (*id.* ¶¶ 19, 53).  However, Plaintiffs fail to allege facts comparing the Product to cheaper alternatives or methods for quantifying their loss.  *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-CV-1220, 2018 WL 626527, at *3 (D. Minn. Jan. 30, 2018) (recognizing that under New Jersey law, a plaintiff can allege ascertainable loss using price differences or by providing plausible methods for an expert to quantify its loss).  The Complaint lacks price information about comparable ice coolers and does not explain how the sixty dollars Hargrove paid for the Product at Costco is a price premium.  Absent this information, Plaintiffs' allegation that Hargrove would not have paid a premium price for the Product and would have purchased other, less expensive coolers is an unsupported conclusory statement and is insufficient to plead ascertainable loss based on price differences.  *See id.* (finding that the plaintiffs did not plausibly allege ascertainable loss using price differences when the complaint lacked price information about comparable televisions to support the conclusion that the plaintiff purchased the television at an alleged "price premium"); *Eberhart v. LG Elecs. USA, Inc.*, No. 15-CV-1761, 2015 WL 9581752, at *5 (D.N.J. Dec. 30, 2015) (dismissing CFA claim for failure to allege an ascertainable loss because the plaintiff did not provide a method to determine the premium paid for a higher refresh rate on his television

nor did he allege prices for comparable televisions without the deceptive advertising or with clearly expressed, accurate refresh rates); *Lieberson*, 865 F. Supp. 2d at 541–42 (concluding that an allegation that comparable products "cost at least twenty-five (25%) less" is insufficient without identifying the cost of the allegedly comparable products); *see, e.g.*, *Solo v. Bed Bath & Beyond, Inc.*, No. 06-CV-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (dismissing claim because the "[p]laintiff fail[ed] to specifically allege that what he did receive[] was of lesser value than what was promised").

Accordingly, the Court grants Defendant's motion and dismisses Plaintiffs' New Jersey CFA claim.

### d.   Breach of express warranty

Defendant argues that Plaintiffs' express warranty claim fails because the Product "does not remotely guarantee '120 Hour Ice Retention' in normal usage," (Def.'s Reply 6), and the label has "[c]larifying [l]anguage" that contradicts that interpretation, (Def.'s Mem. 13–14).  In addition, Defendant argues that the Limited Warranty — guaranteeing that the Product will "be free from defects in material or workmanship," (Compl. ¶¶ 85–86) — that accompanied Plaintiffs' purchases was the only express warranty in force, and, under this Limited Warranty, Plaintiffs failed to provide Defendant with notice of any defects in the product as required by the warranty.  (Def.'s Mem. 14–15 (quoting Compl. ¶ 38).)

Plaintiffs contend that they have properly pled claims for breach of express warranty under both New York and New Jersey law.[7]  (Pls.' Opp'n 15.)  In support, Plaintiffs argue that they pled that (1) Defendant claimed that the Product will retain ice for 120 hours; (2) they purchased the Product because of this claim; (3) the Product did not retain ice for 120 hours; and

---

[7]  Plaintiffs do not assert a claim of breach of implied warranty in the Complaint.

(4) they were deprived of the benefits of the bargain and suffered monetary loss because of their reliance and purchase.  (*Id.* at 14–16.)  In addition, Plaintiffs argue that the clarifying language on the Product's label does not insulate Defendant from liability because it is inconsistent with the express warranty — that the Product can retain ice for 120 hours.  (*Id.* at 17.)  Plaintiffs further argue that the language "insinuates that the cooler was tested in controlled conditions to be utilized in [a] real life setting" and "does not displace the alleged misrepresentation," nor were they aware of Defendant's limited warranty on workmanship.  (*Id.* at 17–18.)

Under New York law, to state a claim of breach of express warranty, "a plaintiff must [allege] an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon."  *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111–12 (2d Cir. 2010); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) ("To state a claim for breach of an express warranty under New York law, the plaintiff must plead '(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.'" (quoting *Goldemberg*, 8 F. Supp. 3d at 482)); *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012) (recognizing that in order to state a claim for a breach of an express warranty in New York, a plaintiff must plead "that an express warranty existed, was breached, and that [the plaintiff] had relied on that warranty").  In addition, a plaintiff cannot recover under a breach of express warranty claim unless the product is defective.  *See Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *3 (E.D.N.Y. Sept. 30, 2015) ("[A] successful breach of warranty claim requires that the product be defective." (citing *Reed*, 839 F. Supp. 2d at 578)).  Moreover, "[i]n order to assert a breach of

express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); *see also* N.Y.U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

Similarly, "[t]o establish a breach of express warranty claim under New Jersey law a plaintiff 'must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (footnote omitted) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)); *see also Vicente v. DePuy Synthes Cos.*, --- F. Supp. 3d ---, --- 2021 WL 5150196, at *5 (D.N.J. Nov. 5, 2021) ("To properly plead a claim for breach of express warranty, [a plaintiff] 'must properly allege: (1) that [the] [d]efendant[s] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.'" (fourth alteration in original) (quoting *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 706 (D.N.J. 2011))); *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 592 (D.N.J. 2016) (same).  In contrast to New York law, New Jersey does not require pre-suit notice for a remote manufacturer — a manufacturer who was not the immediate seller of a defective product. *Strzakowlski v. Gen. Motors Corp.*, No. 04-CV-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (recognizing that the New Jersey Supreme Court would not require notice in a case against a remote manufacturer who was not the immediate seller of a defective product and,

27

even if notice was required, New Jersey would require a buyer to give notice only to his immediate seller (citing *Cipollone v. Liggett Grp., Inc.*, 683 F. Supp. 1487, 1498 (D.N.J. 1988))), *rev'd on other grounds*, 893 F.2d 541 (3d Cir.1990), *rev'd in part on other grounds and aff'd in part on other grounds*, 505 U.S. 504 (1992); *see In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-CV-2765, 2017 WL 1902160, at *13 (D.N.J. May 8, 2017) ("Pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller."); *see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 876 (D.N.J. Nov. 24, 2020) (finding conflict between Michigan and New Jersey breach of warranty laws based on Michigan's pre-suit notice requirement).

### i. Plaintiffs have not provided notice for their New York claim

Plaintiffs have failed to allege that they provided the requisite notice to support their New York breach of warranty claim.[8] Plaintiffs' allegation that the notice requirement has been satisfied because "[n]umerous [consumer] complaints [were] lodged against Defendant directly

---

[8] Plaintiffs contend that pre-suit notice was not required, citing an exception for retail customers crafted by certain New York state courts. (Pls.' Opp'n 18–19.) As noted in *Colella v. Atkins Nutritionals Inc.*, "[a]lthough a minority of New York State cases suggest an exception to the notice requirement in retail sales . . . the exception appears to be exclusively applied when a party alleges physical, in addition to economic, injury." 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018); *see Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 391 n.12 (S.D.N.Y. 2021) (same); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020) (following *Colella* and finding the exception "inapplicable where . . . [the] [p]laintiffs have not alleged any physical or personal injury as a result of [the] [d]efendant's alleged breach"); *Richards v. Johnson & Johnson, Inc.*, No. 17-CV-178, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (noting that the exception applies only to actions where personal injury is pleaded and that a similar "distinct treatment of warranty claims in personal injury cases is found in other jurisdictions"); *Tomasino v. Estee Lauder Cos.*, No. 13-CV-4692, 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015) (rejecting the plaintiff's contention that the retail sale exception applies, because "every case . . . in which courts implementing New York law declined to apply the notice requirement . . . amounted to a tort claim in which the plaintiff suffered some personal injury"). Because Plaintiffs only allege economic injury in the form a price premium paid for the Product, the Court declines to apply this exception — to the extent it even exists.

and through other forums," (Compl. ¶ 38), is too conclusory. *Brown v. Kerry Inc.*, No.

20-CV-9730, 2021 WL 5446007, at *9 (S.D.N.Y. Nov. 22, 2021). Plaintiffs do not specify

whether the complainants purchased the Product and fail to provide allegations that they notified

Defendant of Defendant's specific alleged breaches. *Niles v. Beverage Mktg. USA, Inc.*, No.

19-CV-1902, 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were

correct that the defendant companies were on notice that there is an issue with the product by

virtue of [a prior] lawsuit, the plaintiffs have not pointed to any law that relieves them of their

own obligation to provide notice before seeking a remedy [for breach of express warranty]."),

*report and recommendation adopted*, 2020 WL 3445730 (E.D.N.Y. June 24, 2020); *see*

*Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar.

30, 2018) ("Proper factual allegations should, at least, include the date and method by which

[the] [p]laintiff afforded such notice to [the] [d]efendant.").

Moreover, "the existence of prior complaints by other consumers cannot satisfy the

notice requirement for th[e] suit" because it does not create a vehicle for negotiation between the

allegedly harmed consumer and manufacturer. *Colpitts v. Blue Diamond Growers*, 527 F. Supp.

3d 562, 590 (S.D.N.Y. 2021) (finding allegation that the defendant received notice and should

have been aware of product issues due to numerous consumer complaints to be "too conclusory"

and recognizing that even if the defendant had been aware, New York's pre-suit notice

requirement still has not been met, as that requirement is intended to "open[] the way for normal

settlement through negotiation" (alteration in original) (quoting *Singleton v. Fifth Generation,*

*Inc.*, No. 15-CV-474, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016))); *Turk*, 2022 WL

836894, at *9 (finding that allegations that the "[d]efendant received notice and should have

been aware of . . . issues [with the product] due to complaints by regulators, competitors, and

consumers[] to its main offices" are insufficient to plead pre-suit notice and avoid dismissal (third alteration in original)); *see also Petrosino*, 2018 WL 1614349, at *2 (explaining that "[p]roper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where "[the] [p]laintiffs failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) (dismissing the plaintiff's breach of warranty claim because the plaintiff "fail[ed] to allege in the [f]irst [a]mended [c]omplaint that they even provided sufficient notice to [the] defendants of their express warranty claims under Florida and New York law, let alone notice within a reasonable time after discovery of a breach").

Thus, the Court dismisses Plaintiffs' New Yok express warranty claim for lack of notice.

### ii.   Plaintiffs fail to allege that Defendant breached the warranty

The Court also dismisses Plaintiffs' New York and New Jersey express warranty claims because Plaintiffs fail to plausibly allege that Defendant breached the terms of its Limited Warranty.

"The plain and ordinary meaning of the term 'defect[s] in . . . materials or workmanship' unambiguously excludes 'design' defects.'" *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) (citation omitted) (alteration in original); *see Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 318 (W.D.N.Y. 2020) ("Under New York law, manufacturing defects are distinct from design defects." (footnote omitted) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir. 1997))).  "[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." *Catalano*, 167 F. Supp. 3d

at 554; *Coba*, 932 F.3d at 121 (3d Cir. 2019) ("[U]nder New Jersey law, a warranty that limits its coverage to defects in 'materials' and 'workmanship' does not, without more, apply to defects in 'design.'"); *Zachmann v. Coleman Co.*, No. 20-CV-9146, 2022 WL 161480, at *5 (S.D.N.Y. Jan. 18, 2022); *In re Subaru Battery Drain Prods. Liab. Litig.*, No. 20-CV-03095, 2021 WL 1207791, at *11 (D.N.J. Mar. 31, 2021) ("A warranty covering 'defect[s] in . . . materials or workmanship[]' unambiguously excludes 'design defects.'" (alterations in original) (quoting *Amato v. Subaru of Am., Inc.*, No. 18-CV-16118, 2019 WL 6607148, at *5 (D.N.J. Dec. 5, 2019))); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y. 2019) ("Courts in [the Second] [C]ircuit have found that a warranty protecting 'defects in materials or workmanship' covers manufacturing defects but not design defects." (collecting cases)); *see, e.g.*, *Cali v. Chrysler Grp. LLC*, No. 10-CV-7606, 2011 WL 383952, at *2 (S.D.N.Y. 2011) ("Chrysler's Basic Limited Warranty covers only defects in 'material, workmanship or factory preparation' — not defects in vehicle design."), *aff'd*, 426 F. App'x 38 (2d Cir. 2011).

In *Coba*, the Third Circuit explained the differences among defects in material, workmanship, and design:

> [D]efects in "workmanship" and "materials" are flaws pertaining to the construction or manufacture of a product, while defects in "design" are shortcomings that arise in the plans for a product's creation.  More specifically, a "materials" defect is a failing in the quality of the actual substances used to make a product; a "workmanship" defect is a deficiency in the execution of a product's assembly or construction; and a "design" defect is a flaw inherent in the product's intended operation and construction.

*Coba*, 932 F.3d at 121 (citations omitted); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *11–12; *see also Zachmann*, 2022 WL 161480, at *5 n.3 ("Under New York law, 'a defect in a product may consist of one of three elements: mistake in manufacturing,' called a manufacturing defect; 'improper design,' called a design defect; or 'inadequacy or

absence of warnings for the use of the product,' called a warning defect." (quoting *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 478–79 (1980))); *Orange Transp. Servs., Inc.*, 450 F. Supp. 3d at 318 ("To assert a manufacturing defect, 'the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction.'" (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001))).  "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units."  *Miccio v. Conagra Foods, Inc.*, 224 F. Supp. 3d 200, 204 (W.D.N.Y. 2016) (quoting *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 257 (E.D.N.Y. 2014)); *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 824 (D.N.J. 2019) ("[A] manufacturing defect exists if a product 'deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae.'" (quoting N.J. Stat. Ann. § 2A:58C-2(a))).

Plaintiffs allege that Defendant warranted the Product "free from defects in material and workmanship under normal use and service."  (Compl. ¶ 85.)  This Limited Warranty "covers manufacturing defects, not design defects."  *Zachmann*, 2022 WL 161480, at *5 (quoting *Catalano*, 167 F. Supp. 3d at 554); *see Coba*, 932 F.3d at 123 (concluding that under New Jersey law, truck manufacturer's written warranty covering defects in "materials or workmanship" excluded design defects); *Catalano*, 167 F. Supp. 3d at 554 ("[A] warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects.").  Plaintiffs' allegation that the Product does not properly retain ice is properly characterized as a design defect because it is an alleged flaw inherent in the Product's intended operation and

32

construction and not a deviation from other units. *Coba*, 932 F.3d at 121; *Miccio*, 224 F. Supp. 3d at 204; *see, e.g.*, *Zachmann*, 2022 WL 161480, at *5 (characterizing alleged ice retention failures of an ice cooler as a design defect, not a manufacturing defect).  Thus, Plaintiffs fail to sufficiently allege that the Limited Warranty covers the alleged defects of the Product.  *Orange Transp. Servs., Inc.*, 450 F. Supp. 3d at 320 (dismissing express warranty claim where the plaintiff "consistently allege[d] defects common to the [vehicle] engine generally" and finding that "'claim [wa]s more appropriately characterized as a design defect' because it relies on allegations regarding defects that 'are common to an entire class of vehicles based on their design'" (quoting *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018))); *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 614 (D.N.J. 2015) (dismissing breach of limited warranty claim guaranteeing the product was free from defects in material and workmanship where the plaintiff did not allege structural or physical damage); *see also Zachmann*, 2022 WL 161480, at *5 ("They do not allege, for example, that the specific coolers [the] plaintiffs purchased do not 'keep the ice' for five days because of a mistake in manufacturing those specific coolers, which would be covered by [the] defendant's express warranty.").

Accordingly, the Court dismisses Plaintiffs' express warranty claim.

**e.   Common law claims**

Defendant argues that Plaintiffs' common law claims for negligent misrepresentation, fraud, and unjust enrichment are insufficiently pled because Plaintiffs have failed to allege at least one element of each claim.[9]  (*See* Def.'s Mem. 16–21; Def.'s Reply 8–9.)

---

[9]  Defendant also argues that Plaintiffs' fraud claim should be dismissed pursuant to the economic loss rule.  (Def.'s Mem. 18–19.)  The economic loss rule, which "is intended to

maintain the distinction between tort law and contract law," "prohibits recovery under tort for economic losses which are not also accompanied by tangible, physical harm." *Hunt Constr. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 14 (2d Cir. 2010) (citing *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416 (1995)); *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) ("Under New Jersey law, the economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases.'" (quoting *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453, 471 (App. Div. 2009))); *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 891 (D.N.J. Nov. 24, 2020) ("The economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort.'" (quoting *Peters v. Countrywide Home Loans, Inc.*, No. 05-CV-2016, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016))). Most district courts applying New York law, including this Court, *see Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, No. 20-CV-2130, 2021 WL 3861995, at *10 (E.D.N.Y. Aug. 30, 2021), "have declined to apply the economic loss rule to intentional torts" such as fraud, "citing the absence of any New York authority to the contrary" and noting "that New York courts have long 'routinely permitted' fraud claims for pure economic loss to proceed." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 432 (S.D.N.Y. 2017) (explaining that the minority of courts that have applied the economic loss rule to fraud claims under New York law "have relied solely on [*Orlando v. Novurania of America, In*c., 162 F. Supp. 2d 220, 226 n.2 (S.D.N.Y. 2001)], which, in turn, cited no authority for its conclusion, leading this [c]ourt and others to find it unpersuasive"), *modified on reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017); *see Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 1165077, at *11 n.16 (S.D.N.Y. Mar. 26, 2021) ("[A] number of courts in this [d]istrict have determined that New York's economic loss doctrine does not apply to intentional torts such as fraud, and have refrained from dismissing fraud claims on this basis." (first citing *Fed. Deposit Ins. Corp. ex rel. First NBC Bank v. Murex LLC*, No. 16-CV-7703, 2018 WL 2694431, at *8 (S.D.N.Y. June 5, 2018); and then citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (collecting cases))); *Murex LLC*, 2018 WL 2694431, at *8 (noting that "some division of authority among courts in this circuit . . . as to whether the economic-loss doctrine also bars [intentional fraud] claims" and concluding that, "[a]lthough this [c]ourt has previously followed *Orlando*, the [c]ourt's considered view, upon a fresh review of the case law and 'the absence of any contrary authority from the New York state courts,' is that New York's economic loss doctrine does not clearly bar intentional fraud claims" (citations omitted) (quoting *Weisblum*, 88 F. Supp. 3d at 297)). Similarly, under New Jersey law, the rule does not operate to bar tort actions under theories of fraud or negligent misrepresentation. *Kirtley v. Wadekar*, No. 05-CV-5383, 2006 WL 2482939, at *4 (D.N.J. Aug. 25, 2006) ("[T]he economic loss doctrine does not bar tort claims for fraud and misrepresentation . . . , '[it] only precludes claims brought under tort principles which are inconsistent with the remedies authorized under the UCC . . . ; however, the UCC expressly preserves a buyer's right to maintain an action for fraud and misrepresentation.'" (quoting *Coastal Grp. v. Dryvit Sys.*, 274 N.J. Super. 171, 177 (App. Div. 1994))); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-13544, 2018 WL 4144683, at *14 (D.N.J. Aug. 29, 2018); *see also Powell*, 502 F. Supp. 3d at 897 (denying motion to dismiss negligent misrepresentation claim because the tortious conduct alleged was

The Court addresses each of Plaintiffs' claims.

### i.   Negligent misrepresentation

Defendant argues that Plaintiffs do not state a cause of action for negligent misrepresentation because Plaintiffs have not sufficiently pled that Defendant made a misrepresentation or that a consumer justifiably relied on an alleged representation that the Product would retain ice for 120 hours.  (Def.'s Mem. 16.)  In support, Defendant asserts that the Product's label states, "up to," and makes no warranty or promise ice will not melt sooner in actual use.  (*Id.*)  In addition, Defendant argues that Chung's New York negligent misrepresentation claim fails because the parties did not have a special relationship as required by New York law.  (*Id.* at 17–18; Def.'s Reply 8.)

Plaintiffs contend that Defendant made a false affirmation of fact by claiming that the Product can retain ice for 120 hours.  (Pls.' Opp'n 19.)  In addition, Plaintiffs argue that the parties have a special relationship because Defendant held itself out as holding unique expertise regarding ice coolers and knew that the Product would not perform as claimed during normal usage.  (*Id.* at 20–21.)

### 1.   Plaintiffs' New York negligent misrepresentation claim

Under New York law, a negligent misrepresentation claim requires a plaintiff to show "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 842 F.

---

sufficiently extraneous to any contract).  Accordingly, the Court does not apply the economic loss rule to Plaintiffs' fraud or negligent representation claims.

App'x 705, 706 (2d Cir. 2021) (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)).

The New York Court of Appeals has explained that:

> It is well settled that "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."

*Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012) (alteration in original) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180–81 (2011)); *see also Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he elements of negligent representation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage . . . [(5)] to one whom the declarant is bound by some relation or duty of care." (citing *White v. Guarente*, 43 N.Y.2d 356, 361 (2011))).

A duty of care may arise when "there is actual privity of contract between the parties or a relationship so close as to approach that of privity." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (per curiam) (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 425 (1989)).  The Second Circuit has noted that although some of its prior decisions "state that a negligent misrepresentation claim will not lie unless the parties share a fiduciary or otherwise 'special' relationship, [those decisions] cannot be read to preclude such a cause of action brought on grounds of privity or near-privity." *Id.* at 584 n.15; *see also Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 n.3 (2d Cir. 2021) ("New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity." (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012))).  "Courts have

36

reconciled the discrepancy in the caselaw by recognizing a fiduciary duty as one, but not the exclusive, basis for a negligent misrepresentation claim." *Aetna Cas. & Sur. Co.*, 404 F.3d at 584 n.15 ("A fiduciary relationship may be a sufficient condition to support a claim for negligent misrepresentation absent the existence of actual privity; however, it is not a necessary condition . . . ." (quoting *In re Leslie Fay Cos.*, 918 F. Supp. 749, 769 (S.D.N.Y. 1996))).  A relationship is considered "so close as to approach that of privity" if: (1) "the defendant makes a statement with the awareness that the statement was to be used for a particular purpose"; (2) "a known party or parties rely on this statement in furtherance of that purpose"; and (3) "there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Id.* at 584 (citing *Ossining Union Free Sch. Dist.*, 73 N.Y.2d at 425); *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 535 (S.D.N.Y. 2021) (quoting *Aetna Cas. & Sur. Co.*, 404 F.3d at 584).  However, "where the statement at issue is directed at a 'faceless [or] unresolved class [of] persons,' no duty of care arises." *Aetna Cas. & Sur. Co.*, 404 F.3d at 584 (quoting *White*, 43 N.Y.2d at 361); *Patellos*, 2021 WL 827769 (same); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017) (same).

"Because '"casual" statements and contacts' are prevalent in business, liability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the [plaintiff] such that reliance on the negligent misrepresentation is justified.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)); *Turk*, 2022 WL 836894, at *11 ("In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the existence of a special relationship capable of giving rise to an exceptional duty

regarding commercial speech and justifiable reliance on such speech." (quoting *Brown*, 2021 WL 5446007, at *7)); *Dall. Aerospace, Inc.*, 352 F.3d at 788 ("[T]he law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified."); *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) ("A 'closer degree of trust between the parties than that of the ordinary buyer and seller is required' to establish the existence of 'a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech.'" (alterations in original) (quoting *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *8 (S.D.N.Y. Oct. 26, 2016))); *see also Izquierdo*, 2016 WL 6459832, at *8 ("[T]he vast majority of arms-length commercial transactions, which are comprised of 'casual statements and contacts,' will not give rise to negligent misrepresentation claims." (quoting *Kimmell*, 89 N.Y.2d at 263)); *Stoltz*, 2015 WL 5579872, at *25 (explaining that "courts have consistently held that advertisements alone are not sufficient" to allege the existence of a special relationship (collecting cases)). When a plaintiff fails to allege the existence of a special relationship or the relationship is only "sparsely pled," the plaintiff must "emphatically allege[] the other two factors enunciated in *Kimmell*" — "whether the person making the representation held or appeared to hold unique or special expertise" and "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188 (first quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001); and then quoting *Kimmell*, 89 N.Y.2d at 264).

Plaintiffs' New York negligent misrepresentation claim fails because they have not alleged a special relationship between themselves and Defendant; they are a "faceless or

unresolved class or persons" to whom Defendant owed no special duty of care. *See Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at \*6 (E.D.N.Y. Feb. 13, 2020) (explaining that the defendant's "status as a trusted brand . . . does not give rise to a duty to impart correct information, as the plaintiffs comprise 'a faceless o[r] unresolved class of consumers" (alteration in original) (quoting *Aetna Cas. & Sur. Co.*, 404 F.3d at 584)).  In addition, Plaintiffs have not "emphatically alleged" that Defendant possesses unique or special expertise, or was aware how the ice retention labeling would be viewed, and labelled its products for that purpose. *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188; *see also Izquierdo*, 2016 WL 6459832, at \*9 ("Nothing in the complaint suggests that the transaction differs in any way from the numerous cases in this [d]istrict and [c]ircuit in which courts have held that a basic commercial transaction does not give rise to a special relationship.  Indeed, the relationship between [the defendant] and [the] [p]laintiffs appears to be more attenuated than a run-of-the-mill, arms-length commercial transaction because [the] [p]laintiffs did not buy the [c]andy from [the defendant] — they bought it from a movie theater concession stand."); *Stoltz*, 2015 WL 5579872, at \*25 ("The requisite special relationship may not . . . be based solely on [the] [d]efendant['s] status as the manufacturer of the [product] because, if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case." (citing *Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at \*1, 14 (S.D.N.Y. May 7, 2015))).  Rather, Plaintiffs only allege that "Defendant has failed to fulfill their duties to disclose the material facts in making the representations."  (Compl. ¶ 96.)  Plaintiffs do not cite any cases to support their claim that a special relationship may be based on a representation directed at consumers and intended to induce reliance, and courts have consistently held that advertisements alone are insufficient. *See, e.g.*, *Turk*, 2022 WL 836894, at \*12 (dismissing

39

negligent misrepresentation claim because the plaintiff's allegations that the defendant is a "global leader" in the industry and "hold[s] itself out as having special knowledge and experience [in] this area" are textbook "naked assertions devoid of further factual enhancement" that will not suffice to adequately state a claim for relief); *Tyman v. Pfizer, Inc.*, No. 16-CV-6941, 2017 WL 6988936, at *17 (S.D.N.Y. Dec. 27, 2017) (dismissing negligent misrepresentation claim for failure to allege special relationship because the plaintiff's allegations that defendant "holds itself out to the public as a trusted expert in the consumer healthcare products arena" and knew what representations it made about the ChapStick Products, and also knew "what ingredients were added" did not extend beyond the ordinary relationship which exists between a consumer and a manufacturer of personal care products), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *Austin v. Albany Law Sch. of Union Univ.*, 957 N.Y.S.2d 833, 844–45 (App. Div. 2013) (dismissing negligent misrepresentation claim brought by graduates against law school based on alleged misrepresentations posted on the defendant's website and included in its marketing materials used to attract prospective students because the defendant "presented material to prospective students in a broad, generalized format, and there are no allegations that [the] [defendant] fostered a special relationship with [the] plaintiffs or provided them with personalized information"); *McGill v. Gen. Motors Corp.*, 647 N.Y.S.2d 209, 210 (App. Div. 1996) (dismissing negligent misrepresentation claim for failure to allege special relationship and finding that car manufacturer's allegedly deceptive statements in advertisements were not sufficient because "this kind of mass communication cannot establish 'privity' with unidentified members of the public"); *see also DeBlasio v. Merrill Lynch & Co.*, No. 07-CV-318, 2009 WL 2242605, at *5, *33 (S.D.N.Y. July 27, 2009) (dismissing negligent misrepresentation claim

because allegedly misleading statements made on the defendants' websites and in their

advertisements did not give rise to special relationship).

In their opposition, Plaintiffs assert that Defendant "held itself out as holding unique or

special expertise regarding the coolers."  (Pls.' Opp'n 20.)  However, this claim is not made in

the Complaint and is nevertheless a conclusory allegation that is insufficient to sustain a

negligent misrepresentation claim.  *Zachmann*, 2022 WL 161480, at *7 ("Although [the]

[plaintiff] generally pleads that 'a special relationship of trust or confidence' existed between the

parties, the lack of allegations showing a relationship with [the defendant] mandates dismissal of

this claim." (quoting *Mandarin Trading Ltd.*, 16 N.Y.3d at 180–81)); *Mandarin Trading Ltd.*, 16

N.Y.3d at 181 (affirming dismissal of negligent misrepresentation claim because "the pleadings

fail to allege the existence of any relationship" or even "bare, minimal contact" between the

parties); *cf. Hughes*, 930 F. Supp. 2d at 475 (denying motion to dismiss negligent

misrepresentation claim and holding that the plaintiffs sufficiently alleged special relationship

between consumers and vitamin manufacturer defendants because the defendants' marketing

held them out as having "special expertise regarding the purported health benefits" of

supplement; labeling on supplement contained language suggesting medical or scientific backing

for claims; and the defendants' website included section purportedly written by "expert"

recommending daily use of supplement "because it is gentler on the stomach and because of all

the clinical research that supports the use of this product").  Plaintiffs fail to allege "a closer

degree of trust between the parties than that of the ordinary buyer and seller," as required for a

negligent misrepresentation claim.  *Dall. Aerospace, Inc.*, 352 F.3d at 788 (concluding that the

seller of an aircraft engine did not need to disclose to the arms-length buyer that the engine was

not airworthy); *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *4

(S.D.N.Y. July 20, 2016) (dismissing the plaintiff's negligent misrepresentation claim for failure to plead a "relationship with the defendants" that "extended beyond that which exists between an ordinary consumer and a prescription drug manufacturer").

### 2.   Plaintiffs' New Jersey negligent misrepresentation claim

"Under New Jersey law, a plaintiff states a claim for negligent misrepresentation when the plaintiff plausibly alleges that the defendant owed a duty of care to the plaintiff and negligently provided the plaintiff with false information, and that the plaintiff 'incurred damages proximately caused by its reliance on that information.'"  *Harris v. Pfizer Inc.*, --- F. Supp. 3d ---, ---, 2022 WL 488410, at *5 (S.D.N.Y. Feb. 16, 2022) (quoting *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir. 2004)); *Bergen Beverage Distribs. LCC v. E. Distribs., Inc.*, No. 17-CV-4735, 2022 WL 833373, at *8 (D.N.J. Mar. 21, 2022) ("A successful claim for negligent misrepresentation under New Jersey law requires a plaintiff to assert factual allegations pleading three elements: '[1] the defendant negligently made an incorrect statement of a *past or existing fact*, [2] that the plaintiff justifiably relied on it and [3] that his reliance caused a loss or injury.'" (quoting *Schechter v. Hyundai Motor Am.*, No. 18-CV-13634, 2020 WL 1528038, at *15 (D.N.J. Mar. 31, 2020))); *Chang v. Fage USA Dairy Indus., Inc.*, No. 14-CV-3826, 2016 WL 5415678, at *12 (E.D.N.Y. Sept. 28, 2016) ("Under New Jersey law, the elements of negligent misrepresentation are: 'an incorrect statement, negligently made and justifiably relied upon, and economic loss or injury sustained as a consequence of that reliance.'" (quoting *Green v. Morgan Props.*, 215 N.J. 431, 457 (N.J. 2013))).

Plaintiffs' negligence claim under New Jersey law fails for the same reason that their CFA claim fails.  Without allegations as to ascertainable losses, Plaintiffs have failed to plead a claim for negligent misrepresentation under New Jersey law.  *Id.*; *see Mason v. Coca-Cola Co.*,

42

774 F. Supp. 2d 699, 705 (D.N.J. 2011) ("This [c]ourt need not look further at whether [the] plaintiffs have pled facts that show incorrect statements that were justifiably relied upon because [the] plaintiffs have not shown how they have suffered damages and ascertainable losses of money or property.").

Accordingly, the Court dismisses Plaintiffs' negligent misrepresentation claims.

### ii. Fraud

Defendant argues that Plaintiffs do not state a cause of action for fraud because Defendant did not make a misrepresentation concerning the ice retention capabilities of the Product and Plaintiffs have not sufficiently alleged reliance. (Def.'s Mem. 16–17; Def.'s Reply 8–9.) In support, Defendant asserts that the clarifying language makes clear that ice retention is measured in controlled laboratory conditions, not in the real world, (*id.* at 17), and that Plaintiffs' reliance on their subjective understanding of "up to 120-hour ice retention" is not reasonable, (*id.*). In addition, Defendant argues that Plaintiffs' fraud claim is not pled with particularity because Plaintiffs have failed to allege facts to show a strong inference of fraudulent intent. (*Id.* at 9, 19.)

Plaintiffs argue that Defendant made factual misrepresentations that the Product would retain ice for 120 hours and such a representation would mislead a reasonable consumer because the label does not provide a "hint" that the Product will not perform similarly in a real-life setting. (Pls.' Opp'n 2, 13, 17.) In response to Defendant's particularity argument, Plaintiffs contend that their claims are pled with particularity because they have alleged that (1) the 120-hour ice retention claim was a material misrepresentation, (2) made by Defendant, (3) Plaintiffs viewed the misrepresentation at a retail store before purchasing the Product, and (4) the misrepresentation is fraudulent because the coolers did not retain ice for 120 hours. (*Id.* at 22.)

In addition, Plaintiffs argue that these allegations meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." (*Id.* (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (first citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); and then citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam)); *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (same (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995))). Similarly, "[i]n New Jersey, the five elements of common law fraud are '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503 (D.N.J. 2014) (quoting *Panella v. O'Brien*, No. 05-CV-1790, 2006 WL 2466858, at *8 (D.N.J. Aug. 24, 2006)); *Latraverse v. Kia Motors of Am., Inc.*, No. 10-CV-6133, 2011 WL 3273150, at *3 (D.N.J. July 27, 2011) (quoting *Lightning Lube, Inc., v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993). "At the pleading stage, to withstand a Rule 12(b)(6) challenge in federal court, [p]laintiffs must 'assert facts that plausibly support the inference of fraud.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013)); *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-CV-21401, 2020 WL 6269277, at *12 (D.N.J. Oct. 26, 2020).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)" of the Federal Rules of Civil Procedure. *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171; *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-13544, 2018 WL 4144683, at *10 (D.N.J. Aug. 29, 2018) ("Federal Rule of Civil Procedure 9(b) governs [the] [p]laintiffs' fraud-based claims.  It provides: '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"); *Turk*, 2022 WL 836894, at *4 ("[F]raud claims — including common law fraud claims — are subject to the heightened pleading standard set forth in Rule 9(b)."); *see Powell*, 502 F. Supp. 3d at 887 ("Because of this difference in standards, plaintiffs may not benefit from the same inferences they enjoy under a 12(b)(6) analysis if they fail to meet the heightened pleading requirements." (citing *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 156 (3d Cir. 2004))).  "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)).  "[T]he particularity pleading requirements of [Rule 9(b)] . . . 'require[] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Fin. Guar. Ins. Co.*, 783 F.3d at 402–03 (quoting *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187); *Frederico*, 507 F.3d at 200.  "In other words, 'Rule 9(b) requires that a plaintiff set forth the who, what, when, where[,] and how of the alleged fraud.'" *Thar Process, Inc. v. Sound Wellness, LLC*, No. 21-CV-422, 2022 WL 170608, at *6 (W.D.N.Y. Jan. 18, 2022) (quoting *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20-CV-3661, 2021 WL

4463109, at *4 (S.D.N.Y. Sept. 29, 2021)); *Kearney*, 2018 WL 4144683, at *10 (quoting

*Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)).  Rule 9(b) also

states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

generally."  *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171 (quoting Fed. R. Civ. P. 9(b)).

"But because 'we must not mistake the relaxation of Rule 9(b)'s specificity requirement

regarding condition of mind for a license to base claims of fraud on speculation and conclusory

allegations[,] . . . [the] plaintiffs must allege facts that give rise to a strong inference of

fraudulent intent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (first alteration

in original) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)); *see also*

*Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171 ("[T]hough mental states may be pleaded

'generally,' [p]laintiffs must nonetheless allege facts 'that give rise to a strong inference of

fraudulent intent.'" (quoting *Lerner*, 459 F.3d at 290)).  "A 'strong inference of fraudulent intent'

may be established either '(a) by alleging facts to show that defendants had both motive and

opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness.'"  *Honeyman v. Hoyt (In re Carter-Wallace,*

*Inc., Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp*, 25 F.3d

1124, 1128 (2d Cir. 1994)).

      Plaintiffs' allegations of fraudulent intent are conclusory.  Plaintiffs allege that

"Defendant intentionally made materially false and misleading representations" that the Product

was tested in laboratory to be utilized in real life setting," that "[the] Product[] [is] expected to

exceed the claim in laboratory setting," and that the "up to" phrase evinces Defendant's intent to

lead consumers to believe that the ice retention applies to normal settings.  (Compl. ¶ 106; Pls.'

Opp'n 13.)  This is insufficient to establish fraudulent intent.  *See, e.g.*, *Turk*, 2022 WL 836894,

at \*13 (finding that the plaintiff failed to plead scienter where she alleged that the "[d]efendant's fraudulent intent is evinced by its knowledge that the [p]roducts' abilities were not consistent with its representations"); *Zachmann*, 2022 WL 161480, at \*7 (holding that the plaintiff's allegation that the "[d]efendant's fraudulent intent is evinced by its failure to accurately disclose the issues described [in the complaint], when it knew not doing so would mislead customers," was insufficient to establish fraudulent intent); *cf. Colpitts*, 527 F. Supp. 3d at 585–86 (finding allegation that "[t]he defendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements were not true or accurate" to be "conclusory" and "fall short of the Rule 9(b) standard" (collecting cases)); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. 2014) (holding that allegation that the "[d]efendant intentionally concealed and failed to disclose the true facts about the [products] for the purpose of inducing [the] [p]laintiff and the [c]lass to purchase the [products]" was conclusory and not enough to adequately plead fraudulent intent).

Plaintiffs also fail to assert factual allegations demonstrating that Defendant possessed a strong motive to commit fraud or circumstantial evidence of conscious misbehavior or recklessness.  Plaintiffs allege that "Defendant has reaped huge profits" as a result of its false marketing and advertising.  (Compl. ¶ 54.)  However, "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Colpitts*, 527 F. Supp. 3d at 586 (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 354 (S.D.N.Y. 2020)); *see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (general corporate profit motive does not establish scienter); *In re Frito-Lay N. Am, Inc. All Nat. Litig.*, 2013 WL 4647512, at \*25 ("Frito-Lay's generalized motive to satisfy consumers' desires, [and]

47

increase sales and profits, 'does not support a strong inference of fraudulent intent.'" (quoting *Chill*, 101 F.3d at 268)).

Accordingly, the Court dismisses Plaintiffs' fraud claims.

### iii.   Unjust enrichment

Defendant argues that Plaintiffs' unjust enrichment claim fails as a matter of law because no injustice occurred.  (Def.'s Mem. 19.)  In support, Defendant asserts that the clarifying language on the Product told Plaintiffs precisely how ice retention was calculated and "Plaintiffs got exactly what the label told them they would."  (*Id.* at 20.)  In addition, Defendant argues that (1) Chung's New York unjust enrichment claim is duplicative of Plaintiffs' other contract and tort claims; (2) Hargrove's New Jersey unjust enrichment claim must be dismissed because he has an adequate remedy at law and because he lacks privity with Defendant; and (3) Plaintiffs cannot state an unjust enrichment claim because a written contract — the Limited Warranty — governs the party's obligations.  (*Id.* at 20–21.)

Plaintiffs argue that their unjust enrichment claims are not duplicative because, to the extent Plaintiffs cannot satisfy state consumer protection laws or common law claims, the Court may hold that their unjust enrichment claims are viable.  (Pls.' Opp'n 23.)

### 1.   Plaintiffs' New York unjust enrichment claim

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Myun-Uk Choi v. Tower Res. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (same) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).  An unjust enrichment claim "may be premised on deceptive conduct."  *Mancuso v. RFA Brands,*

*LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020); *see also Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (2004) ("[The] [p]laintiffs' allegations that Microsoft's deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment."). However, "unjust enrichment is not a catchall cause of action to be used when others fail . . . [and a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Mancuso*, 454 F. Supp. 3d at 208 (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). The Second Circuit has stated that "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (2008)); *Turk*, 2022 WL 836894, at *14 ("[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim," . . . and "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" (second alteration in original) (first quoting *Corsello*, 18 N.Y.3d at 790; and then quoting *NetJets Aviation, Inc.*, 537 F.3d at 175)); *Harris*, --- F. Supp. 3d at ---, 2022 WL 488410, at *5 (same); *Grossman*, 516 F. Supp. 3d at 285 ("[U]njust enrichment claims should be dismissed 'where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" (quoting *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018))); *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment claim because it was duplicative of the plaintiff's other dismissed claims).

Plaintiffs allege violations of the GBL and CFA, as well as several common-law torts. (Compl. ¶¶ 69–115.) Plaintiffs' unjust enrichment claim is based on the same allegations as

those set forth in support of these other claims, and Plaintiffs have not shown how their unjust

enrichment claim differs from their other claims.  The Court therefore dismisses Plaintiffs' unjust

enrichment claim as duplicative.[10]  *See, e.g.*, *Turk*, 2022 WL 836894, at *11 (dismissing unjust

enrichment claim where the plaintiff's allegations that the labeling on the defendant's ice coolers

is deceptive and misleading is premised on the same factual allegations as those supporting the

plaintiff's other claims, and the plaintiff has not alleged distinct damages with respect to the

unjust enrichment claim); *Grossman*, 516 F. Supp. 3d at 285 (dismissing unjust enrichment claim

that "duplicate[d] the plaintiff's other claims, which ar[o]se out [of] identical facts," namely "the

defendant's alleged misrepresentation on the [p]roduct packaging"); *Mancuso*, 454 F. Supp. 3d

at 208 (dismissing the plaintiff's unjust enrichment claims because the claim relies on the same

operative facts of his other claims and "to the extent these claims ultimately succeed, the unjust

enrichment claim would be duplicative, and to the extent the claims fail, the basis for [the

plaintiff's] unjust enrichment claim would necessarily crumble" (quoting *Brady v. Anker*

---

[10]  Plaintiffs unpersuasively rely on *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) and *Burton v. Iyogi, Inc.*, No. 13-CV-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) to argue that their unjust enrichment claim should survive dismissal because "under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." (Pls.' Opp'n 22–23.)  *Henry* concerned claims of race and gender discrimination, not products liability or unjust enrichment. 42 F.3d at 92–93. Moreover, *Burton*, is inapposite. There, the defendant did not argue that the plaintiff's unjust enrichment claim was duplicative; rather, it argued that the plaintiff's unjust enrichment claim was precluded by the existence of a valid and enforceable contract covering the subject matter of the plaintiff's claim, and the court declined to dismiss the plaintiff's unjust enrichment claim because the plaintiff had alleged fraud in the inducement and disputed the validity of the contract.  2015 WL 4385665, at *11.  "As such, *Burton* presented wholly different factual circumstances and legal claims, and has no effect on the Court's conclusion here."  *See Turk*, 2022 WL 836894, at *11 (dismissing the plaintiff's unjust enrichment claim as duplicative, despite plaintiff's reliance on *Henry* and *Burton*); *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *18 (S.D.N.Y. Mar. 18, 2022) (dismissing the plaintiff's unjust enrichment claims as duplicative, despite the plaintiff's reliance on *Henry*, because *Henry* concerned claims of race and gender discrimination, not products liability or unjust enrichment).

*Innovations Ltd.*, No. 18-CV-11396, 2020 WL 158760, at *12 (S.D.N.Y. Jan. 13, 2020))); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 222 (S.D.N.Y. July 10, 2019) (dismissing unjust enrichment claim where the "plaintiffs have offered no distinction for how the unjust enrichment claim differs from their tort claims"); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 559 (S.D.N.Y. 2016) (dismissing unjust enrichment claim that "rel[ied] on the same set of facts" underlying the plaintiff's claims for deceptive labeling and breach of express warranty); *Goldemberg*, 8 F. Supp. 3d at 483–84 (dismissing an unjust enrichment claim under New York law as duplicative of claims alleging violations of New York statutory law and breach of express warranty); *Koenig*, 995 F. Supp. 2d at 290–91 ("Yet an unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'" (quoting *Corsello*, 18 N.Y.3d at 790–91)).

Accordingly, the Court dismisses Plaintiffs' New York unjust enrichment claim.

### 2. Plaintiffs' New Jersey unjust enrichment claim

In New Jersey, "[t]o state a claim for unjust enrichment, the plaintiff must prove: (1) the 'defendant received a benefit' from the plaintiff; (2) 'retention of that benefit [by the defendant] without payment would be unjust'; (3) plaintiff 'expected remuneration from defendant at the time [he] performed or conferred a benefit on defendant'; and (4) the 'failure of remuneration enriched [the] defendant beyond its contractual rights.'" *Semeran v. Blackberry Corp.*, No. 15-CV-750, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (alterations in original) (quoting *VRG Corp. v. GKN Realty Co.*, 135 N.J. 539, 554 (1994)); *Digit. Camera Int'l Ltd. v. Antebi*, No. 11-CV-1823, 2014 WL 940723, at *6 (E.D.N.Y. Mar. 11, 2014) ("To establish unjust enrichment under New Jersey law, the plaintiff must demonstrate 'that defendant received a

benefit and that retention of that benefit without payment would be unjust.'" (quoting *VRG Corp.*, 135 N.J. at 554)).

Although Plaintiffs allege that Defendant was unjustly enriched through the purchase of the Product, there was no relationship conferring any direct benefit on Defendant through Hargrove's purchase, as the purchase was made through a retailer, Costco.  (Compl. ¶¶ 15, 110–115.) Without an allegation of a direct relationship or a mistake, Plaintiffs have insufficiently pled a claim for unjust enrichment.  *See Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 20-CV-14464, 2021 WL 5448716, at *9 (D.N.J. Nov. 19, 2021) (dismissing unjust enrichment claim where the plaintiffs failed to plausibly plead that the defendant knew of and failed to disclose product defect because the plaintiffs did not plausibly plead that the defendant is something other than an innocent third-party); *Chernus v. Logitech, Inc.*, No. 17-CV-673, 2018 WL 1981481, at *16 (D.N.J. Apr. 27, 2018) ("[A] direct relationship is lacking here between [the parties].  [The plaintiff] does not allege that he purchased any products directly from [the defendant].");  *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-CV-846, 2011 WL 2976839, at *27 (D.N.J. July 21, 2011) ("[I]f a plaintiff purchases a product from a third party retailer, rather than the defendant, then no direct relationship exists where the plaintiff purchaser conferred a benefit on the defendant.");  *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-CV-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (concluding that the plaintiff had insufficiently pled a claim for unjust enrichment because he did not allege that he purchased the products directly from the defendant), *aff'd*, 374 F. App'x 250 (3d Cir. 2010); *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (dismissing unjust enrichment claim without prejudice where the plaintiffs alleged that they were unsatisfied with purchases from retailers, yet they wanted damages from the manufacturer); *cf. DeFrank*, 2020 WL 6269277, at *23

52

(concluding that although the plaintiffs purchased the product from a third-party intermediary, the plaintiffs stated an unjust enrichment claim against a manufacturer based on plausible allegations that the manufacturer concealed a known defect that would render the product at issue inoperable and engaged in a false and misleading marketing campaign by failing to disclose the defect).

Accordingly, the Court dismisses Plaintiff's New Jersey unjust enrichment claim.

### f.  Leave to amend

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

The Court grants Plaintiffs leave to amend the Complaint.  *See Woo Hee Cho v. Oquendo*, No. 16-CV-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999))); *Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead."); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (sua sponte granting leave to file a second amended complaint where the plaintiff could provide missing facts necessary to support its claims).

53

Any amended complaint must be filed within thirty days of the date of this Memorandum and Order.  An amended complaint will completely replace the Complaint and must stand on its own without reference to the Complaint and must contain all of the claims Plaintiffs seek to pursue.  The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.  If Plaintiffs elect not to file an amended complaint or fail to file an amended complaint within thirty days of this Memorandum and Order, the Court will direct the Clerk of Court to enter judgment dismissing the Complaint for the reasons stated above.

### III.  Conclusion

For the reasons stated above, the Court grants Defendant's motion and (1) dismisses without prejudice Plaintiffs' claims for injunctive relief for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and (2) dismisses Plaintiffs' GBL, CFA, breach of express warranty, and common law claims for failure to state a claim pursuant to Rule 12(b)(6).  The Court grants Plaintiffs leave to file an amended complaint within thirty days from the entry of this Memorandum and Order and stays all proceedings for thirty days or until Plaintiffs file an amended complaint, whichever is earlier.  If Plaintiffs fail to file an amended complaint within the time allowed or to show good cause as to why they cannot, the Court will direct the Clerk of Court to enter judgment dismissing the action for the reasons stated above.

Dated:  July 8, 2022
        Brooklyn, New York

                                        SO ORDERED:


                                        ___s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge