## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| David Chung and Steven Hargrove, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>Igloo Products Corp.,<br><br>Defendant | 1:20-cv-04926<br><br><br><br>Amended Complaint<br><br><br>Jury Trial Demanded |

Plaintiff David Chung ("Plaintiff"), individually and on behalf of all similarly situated, bring this Amended Class Action Complaint against Igloo Products Corp, ("Igloo" or "Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsels, allege as follows:[1]

### NATURE OF THE ACTION

1.      This is a consumer class action on behalf of consumers seeking remedy for Defendant's deceptive business practice in marketing, advertising and promotion of a line of ice coolers labeled "3 Day," "5 Day," "7 Day," "10 Day" or "120 Hour." ("Product/s"). Igloo claims that its Products retain ice for the stated time period.

2.      The Products are sold in numerous colors and sizes.  Defendant has engaged in, and continues to engage in, deceptive and misleading business practices in marketing and sale of the

---

[1] Plaintiff Hargrove voluntarily dismisses his complaint against Igloo.

Product that has caused injury to Plaintiff and the putative class.

3.      Defendant sold to Plaintiff and Class members, and continues to sell the Products to consumers.

4.      As explained in detail herein, Defendant has led Plaintiff and reasonable consumers to falsely believe that the Products are superior in quality than they actually are and promises performance levels that it cannot achieve.

5.      Moreover, Defendant omits material information in order to induce consumers to purchase the Products.

6.      Plaintiff and the members of the Class reviewed Defendant's misleading labeling, reasonably relied on the representations and omissions on the label, and were deceived into purchasing the Products.

7.      Defendant's actions violate various New York consumer protection laws as well as similar deceptive and unfair practices and consumer protection laws in other states and the District of Columbia.

8.      Defendant violated statutes enacted in each of the fifty states and the District of Columbia, which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes include:

   a.  The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7) and 27), et seq.;

   b.  The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

   c.  The Arizona Consumer Fraud Act, A.R.S. §§ 44-1522;

d. The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), et seq.;

e. The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; and the California Unfair Competition Law, Cal. Bus. And Prof. Code, § 17200, et seq.;

f. The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1- 105(1)(b), (c), (e) and (g), et seq.;

g. The Connecticut Unfair Trade Practices Act, Conn. Gen, Stat. § 42-110(b), et seq.;

h. The Delaware Consumer Fraud Act, Del. Code. Ann. Title 6 § 2513, et seq.;

i. The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), et seq.;

j. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), et seq.;

k. The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5) and (7), et seq.;

l. The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. §§ 480-2(a), et seq.;

m. The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq.;

n. The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill, Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), et seq.;

3

o.   The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

p.   The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, et seq.;

q.   The Kansas Consumer Protection Act, Kan, Stat. §§ 367.170(1) and (2), et seq.;

r.   The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), et seq.;

s.   The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

t.   The Main Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E)  and (G), et seq., and the Main Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.

u.   The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), et seq.;

v.   The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13- 301(1) and (2)(i)-(ii) and (iv), (5)(i) and (9)(i), et seq.;

w.   The Michigan Consumer Protection Act, M.C.P.L.A. §§ 445.903(1)(c), (e), (s) and (cc), et seq.

x.   The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd., et seq.

y.   The Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e) and (g), et seq.

z.   The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq.

aa. The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14—103, et seq.

bb. The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87- 302(a)(5) and (7), et seq.

cc. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), et seq.

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358- A:2(v) and (vii), et seq.

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, et seq.

ff. The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5), (7) and (14) and 57-12-3, et seq.;

gg. The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh. The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), et seq.;

ii. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, et seq.;

jj. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), et seq.;

kk. The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), et seq.;

ll. The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e), (g) and (u), et seq.;

mm. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v), (vii) and (xxi), and 201-3, et seq.;

nn. The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), et seq.;

oo. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5.20(a), et seq.;

pp. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), et seq.;

qq. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5) and (7), et seq.;

rr. The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A. Bus. & C §§ 17.46(a), (b)(5) and (7), et seq.;

ss. The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b) and (i), et seq.;

tt. The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), et seq.;

uu. The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, et seq.;

vv. The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5), (6) and (14), et seq.;

ww. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq.;

xx. The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A6-104, et seq.; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), et seq.

**JURISDICTION AND VENUE**

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").  The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members, Plaintiff, as well as members of the proposed class, are citizens of a state different from Defendant.

10.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omission, and acts giving rise to the claim occurred in this District where Defendant distributed, marketed, advertised, and sold the various ice cooler products at issue throughout New York.

11.      Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue because Plaintiff and a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

12.      This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York, has marketed, advertised and made sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## **PARTIES**

13.      Plaintiff David Chung is a citizen of the State of New York and resides in Richmond County. Plaintiff Chung purchased the Igloo Latitude 90 quart cooler for personal use within the statutory period.

14.      Plaintiff Chung paid no less than $ 49, excluding tax, for the Product at Costco

located in New York.

15.     Defendant Igloo Products Corp., is a corporation organized under the laws of Delaware with corporate address of 777 Igloo Road, Katy, TX 77494, Waller County and the address for service of process is c/o Corporation Service Company, D/B/A CSC-Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, TX 78701.

16.     Defendant manufactured, packaged, distributed, advertised, promoted and sold the products to millions of consumers nationwide.

## FACTUAL ALLEGATIONS

A.  Igloo's Misrepresentation

17.     The Center for Disease Control estimates that 48 million people get sick, 128,000 are hospitalized and 3,000 die each year from foodborne agents. While no statistics are available on the number of sickness caused by use of ice coolers, it is highly likely that a large number of foodborne illness is attributable to ice cooler usage.

18.     A good quality portable ice cooler is an indispensable outdoor equipment for many people during summer months. Ice coolers are essential for traveling, camping trips, fishing trips, barbecues, picnics and other outdoor gatherings. To that end, consumers search for a durable cooler that are cost-effective.

19.     Defendant, for its part, manufactures various models of ice coolers and sells the Products throughout the United States through a network of brick and mortar and online stores. These stores include, but are not limited to, Walmart, K Mart, Target, Costco, Amazon and eBay. The price range of the Products are between $20 to $ 250, excluding tax.

20.     The Products are labeled "3 Day," 5 Day," "7 Day," "10 Day" or "120 Hour," followed by "ICE RETENTION." Some Products contain disclaimers such as "Under Controlled

Conditions in 90 °F Constant," while others contain a statement such as "5 Days In 32 °C (90 °F) Heat. Continuous Heat Under Controlled Conditions."

21.     As a way of illustration, Defendant sells a cooler labeled "Latitude 90." Prominently displayed on the label is "120 HOUR" followed by "ICE RETENTION." The "ice retention" claim is reinforced by a statement "5 DAYS IN 32 °C (90 °F) HEAT. CONTINUOUS HEAT UNDER CONTROLLED CONDITIONS."

22.     Defendant also qualifies the representation with "UP TO" statement. An actual photograph of Defendant's Product label from Plaintiff's cooler is illustrated below.



23.     Igloo's "ice retention" claim is a misnomer created by Defendant to sell more of its Products.

24.     Under a science dictionary, "ice" is defined as "solid state of water" or "a liquid substance that freezes to the solid state at temperature of 0 °C or 32 °F." A dictionary definition of "retain" is "to keep in possession or able to hold" certain characteristics for a specified period of time.

25.     Thus, the actual message being conveyed by Igloo's "5 Day Ice Retention" or "120 Hour" claim is that the Product will be able to keep ice in solid state for 5 days. Under this definition, any amount of ice left in an ice cooler should remain solid ice.

26.     However, it is impossible to "retain ice" under scientific definition unless the ambient temperature is less than 0 ℃ or 32 ℉. No portable device has been invented that will perform as specified by Igloo.

27.     To the extent that no reasonable person would believe that a portable cooler will "retain ice" for the specified time period, the claim is misleading nonetheless. That is because the representation misleads a reasonable person to believe that Igloo's Product is superior to other products without the said claim.

28.     Contrary to the message that Igloo attempts to emanate through the "ice retention" claim, the Products are not superior to any of the other categorical products in the market. Most of Igloo's Products are run-of-the-mill ice coolers made with styrofoam or similar materials.

29.     Igloo's clarifying languages "up to" and "continuous heat under controlled conditions" do not operate to cure the misrepresentation. These additional languages only reinforce the representation that the Products have qualities, attributes and the performance level that it does not have.

30.     Igloo's misleading representations, including additional languages, prevents a reasonable person from fairly evaluating the Product depriving him/her from making a meaningful choice.

B.  Igloo Omits Material Information On the Label and Fails to Disclose and/or Actively Conceals the Information

31.     Counsel's investigation reveals that the term "ice retention" being used by Igloo is

the amount of days it takes for all of the ice to be melted into liquid starting from the cooler filled to full or close to full capacity with ice in a laboratory setting.

32.     There are several issues associated with use of the term "ice retention."

33.     The term "ice retention" is ambiguous and unclear because its description would be generally characterized as a "ice melting rate" or "rate of change.

34.     Further, although "ice retention" itself appears to have generally accepted meaning in the portable cooler industry, the term is not anything like horsepower, miles per gallon or miles per hour which consumers encounter in everyday life.

35.     Moreover, many factors determine the "ice melting rate" including the type of ice utilized (block ice, dry ice or cubed ice), relative humidity, the number of times the cooler is opened and closed, etcetera. No standard measuring system or standard equipment to measure "ice retention" exists in the cooler market unlike the automobile industry where all performance levels are measured utilizing industry accepted or government approved standard equipment.

36.     Therefore, Igloo had a duty to provide an explanatory language, *albeit*, the laboratory testing conditions.

37.     Although the Product label displays Igloo's website - IglooCoolers.com - this is wholly inadequate to provide explanatory language because (1) majority of the companies make their website information available on the product label – buyers would not have known that the term "ice retention" would be defined on its website and (2) the content of the website is not displayed on the label.

38.     Plaintiff and Class members had no direct access to clarify the term "ice retention" prior to purchasing the Products.

39.     Even if Igloo's customers accessed its website, the contents only evince that

11

Defendant had exclusive possession of material information and its efforts to conceal the same.

40.     Igloo's older version of its website, which is no longer available, defines "ice retention," as follows:

> "ice retention" is the product's "level of cooling" measured in how many days it can retain ice. This is tested in controlled laboratory conditions by filling a cooler with a *fixed amount of ice,* closing the lid, and placing it in a 90-degrees-Fahrenheit oven to simulate a warm outdoor environment. The ice cooler's ice retention level is the amount of time (measured in days) that it takes for the *ice to reach 39 degrees and begins to melt.* [2]

41.     Defendant attempts to keep consumers in the dark by actively concealing the true testing conditions as evidenced by not disclosing the amount of ice used during testing. And, utilizing an untenable description that ice begins to melt when it "reach[es] 39 degrees."

42.     Igloo claims that "ice retention" is the "amount of time that it takes ice to reach 39 degrees and begin to melt." The ice begins to melt above 32 degrees Fahrenheit, not 39 degrees Fahrenheit. Igloo's definition of ice retention appears to be 39-degree water temperature after all the ice has melted.

43.     Moreover, Igloo conceals the amount of ice used in testing, opting to use a vague term "*fixed amount of ice.*" However, Igloo fills the cooler almost to full or close to full capacity with ice prior to testing.

44.     No reasonable explanation can be found for misleading customers into thinking that ice begins to melt at 39-degrees. Further, no reasonable explanation can be found for not disclosing the exact amount of ice being utilized for testing – except to conceal the facts.

45.     Plaintiff and Class members had no direct access to the aforementioned information prior to purchasing the Products. Therefore, the information was not easily and reasonably accessible to Plaintiff and Class members.

---

[2] *https://www.igloocoolers.com/pages/faq-* See "What is 'Ice retention' and how does igloo measure it?"

46.     Igloo had exclusive knowledge of the testing conditions because it performed the testing in its own lab. No clarifying languages or laboratory testing conditions were displayed directly on or near the vicinity of the Product.

47.     In addition to the amount of ice utilized, Defendant fails to disclose other factors that may skew the result during laboratory testing such as the humidity level, type of ice used (block ice, dry ice, cubed ice), the number of times the cooler is opened and closed, *etcetera*.

48.     The testing conditions is material information that a buyer would want to know because how customers use the Product and Defendant's laboratory conditions are substantially different. Generally, consumers use two to several bags of ice to chill their coolers during hot summer days.

49.     Igloo further had a duty to disclose the testing information because improper, misuse or dependency on the Product can lead to foodborne sickness. In light of Igloo's "ice retention" claim, a convenient device, such as ice coolers, can ultimately turn into a thing of danger if proper explanatory language is not placed on the product.

50.     At least one company utilizes proper clarifying language for the "Ice Retention" representation. That company's explanatory language states as follows: "This product was 100% filled with ice and the temperature were alternated between 90 °F and 67 °F every 12 hours during the summer. At the 6.5 day mark, ice was still present."

51.     Needless to say, the statement above indicates that Igloo's statement "5 DAYS IN 32 °C (90 °F) HEAT. CONTINOUS HEAT" is false during real life testing.  This is because two products made of similar materials are not expected to have a wide variance in performance level.

C.  Plaintiff Chung's Experience

52.     Plaintiff Chung purchased the Product mainly for fishing. Plaintiff Chung

13

purchased the Product to safely keep 20-80 pounds of fish fresh for 12-15 hours, including 3-5 hour drive from home to fishing boat, each way. Plaintiff further utilized the Product during barbeque and church outings in temperature ranging in 80s-90s °F.

53.     Plaintiff was exposed to Defendant's claims by reading the labeling on the Product prior to purchase.

54.     The misrepresentations Plaintiff saw were factors Plaintiff considered in making his decision to purchase the Product.

55.     At the time of his purchase, Plaintiff Chung was not aware that the term "ice retention" meant the amount of time it takes for the cooler full of ice to completely melt into water. Nor was he aware how the testing was performed, let alone, in an ideal condition, such as a humidity controlled device, that can skew the result.

56.     Igloo's representations and omissions were material to Plaintiff Chung's decision to purchase the Product.

57.     Nonetheless, Igloo failed to provide explanatory information of "ice retention" on the Product with full knowledge of consumer confusion and that the laboratory conditions, especially the amount of ice used, was substantially different than how Plaintiff and consumers use the Product.

58.     The explanatory language was not readily obtainable inside the store when Plaintiff Chung was shopping. No explanatory language was displayed on the Product.

59.     In Plaintiff's experience, the Product's performance level is no different than other coolers he has owned in the past with the exception of the misrepresentations and omissions.

D.  Igloo's Misrepresentations and Omissions Have Injured Plaintiff and Class Members

60.     As a result of Defendant's deceptive claims and omissions, Plaintiff and Class

members have purchased the Products.  They were deprived of the benefit of the bargain and suffered monetary loss.

61.     Plaintiff and Class members have been and will continue to be deceived by Defendant's false claims and omissions.

62.     Based on the misrepresentations and omissions, Defendant is able to price the Product at a premium over other products sold by its competitors without the misrepresentations and omissions. The Product is worth less than the price paid for by Plaintiff and Class members.

63.     Had Plaintiff and members of the Class known of the true facts about the Product, they would not have purchased the Product and/or would have paid substantially less for the Product.

64.     Defendant has reaped huge profits from false, misleading and deceptive marketing and sale of the Products.

65.     Plaintiff brings this action to prevent the dissemination of false, misleading and deceptive advertising and obtain redress for those who have purchased the Products.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

67.     The proposed class consists of: All persons who purchased one or more Defendant's ice cooler that claimed "3 Day" to "10 Day" or "120 Hour" ice retention, sold in the United States and its territories or possessions.

68.     Plaintiff also brings this suit on behalf of sub-classes consisting of purchasers of the Products in New York during the proposed class period.

69.     The members of the class are so numerous that joinder is impracticable.

70.     Plaintiff's claims are typical of the claims of the entire class.

71.     Plaintiff will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

72.     Plaintiff has no interests antagonistic to those of other class members.

73.     Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

74.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class, including, but not limited to:

a.  Whether Defendant's advertising and labelling is false, deceptive, fraudulent and misleading;

b.  Whether the misrepresentation and omission in the product constitute material facts that reasonable purchasers would have considered in deciding whether to purchase them;

c.  Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business at consumers, in violation of the New York General Business Law §§ 349 & 350 for the New York Subclass;

d.  Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, in violation of consumer protection laws in all other jurisdictions;

e.  Whether Plaintiff and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product; and

16

f.  Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or the multiplier to the actual or potential harm to the Class.

75.     Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

76.     Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.

77.     Plaintiff know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

78.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)-New York Subclass

79.     Plaintiff incorporate by reference all preceding paragraphs.

80.     Plaintiff Chung brings this claim on behalf of himself and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law §§ 349 & 350.

81.     Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL §§ 349 & 350 which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce including advertising.

82.     The practices of Defendant described throughout this Complaint were specifically

17

directed to consumers.

83.     Defendant's conduct is malicious, willful, wanton and outrageous such as to shock the conscience of the public and warrant imposition of punitive damages.

84.     Defendant's actions impact the public at large because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of Defendant's deceptive conduct.

85.     By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and members of the Class into purchasing the Products. This is a deceptive business practice that violates NY GBL §§ 349 & 350.

86.     Defendant's representations and omissions misled Plaintiff and are likely in the future to mislead reasonable consumers.

87.     Defendant's violations of NY GBL §§ 349 & 350 proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Product, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all members of the Class, pray for judgment as follows:

A.     Certifying the proposed Class as requested herein;

B.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.     Declaring that Defendant has committed the violations of law alleged herein;

D.     Providing for any and all injunctive relief the Court deems appropriate;

18

E.      Awarding statutory damages in the maximum amount for which the law provides;

F.      Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.      Providing for any and all equitable monetary relief the Court deems appropriate;

H.      Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.      Awarding Plaintiff their reasonable costs and expenses of suit, including attorneys' fees;

J.      Awarding pre- and post-judgment interest to the extent the law allows; and

K.      For such further relief as this Court may deem just and proper.

### **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  July 15, 2022

                                        LAW OFFICE OF JAMES CHUNG

                                        */s/ James Chung*
                                        James Chung
                                        43-22 216th Street
                                        Bayside, NY 11361
                                        Telephone: (718) 461-8808
                                        jchung_77@msn.com

                                        SHEEHAN & ASSOCIATES, P.C.
                                        Spencer Sheehan
                                        60 Cutter Mill Road, Suite 412
                                        Great Neck, NY 11021
                                        Telephone: (516) 303-0552

spencer@spencersheehan.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on July 15, 2022, he caused this document to

be electronically filed with the Clerk of the Court using the CM/ECF system,

which will send notification of filing to counsel of record for each party.

Dated: July 15, 2022

/s/ James Chung
James Chung