# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel:  +1 213 443 4355
Fax:  +1 213 443 4310
www.kslaw.com

Michael B. Shortnacy
Partner
mshortnacy@kslaw.com

July 29, 2022

**VIA ELECTRONIC FILING**
The Honorable Margo K. Brodie
United States District Court, Eastern District of New York
225 Cadman Plaza East, Courtroom 6F
Brooklyn, NY 11201

      Re:    *Chung v. Igloo Products Corp.* (Case No. 1:20-cv-04926-MKB-SJB)

Dear Chief Judge Brodie:

Defendant Igloo Products Corp. ("Igloo"), pursuant to Your Honor's Individual Practice Rule 3.A, respectfully requests a pre-motion conference regarding Igloo's proposed motion to dismiss pursuant to Fed. R. Civ. P. Rules 9(b), 12(b)(1) and 12(b)(6) and to dismiss or strike the nationwide class allegations. Plaintiff lacks standing to represent a nationwide class or to seek injunctive relief; and the Amended Complaint still fails to state any plausible claim for relief as required by Rule 12(b)(6) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

On July 8, 2022, in a carefully reasoned 54-page opinion, this Court dismissed the initial Complaint in its entirety. ECF 22. The Court held that Plaintiffs failed to state a claim in light of Clarifying Language that appeared immediately next to "120 Hour Ice Retention" on the label of their coolers. Contrary to Plaintiffs' subjective interpretation, the label actually said "*Up To* 120 Hour Ice Retention" as measured in "**5 Days in 32°C (90°F) Heat**. Continuous Heat Under Controlled Conditions." The Court held:

> The Court finds that the "up to" phrase, together with the conspicuous language clarifying the conditions under which the ice retention claim would be valid, notifies a reasonable consumer that it will only achieve the advertised 120-hour retention claim under specific conditions.

ECF 22 at 20. The Court also dismissed Chung's NYGBL claim because the statute only applied to transactions made within the state of New York (and Chung failed to plead that he bought his cooler in New York). *Id.* at 20-21. It further held that Plaintiffs lacked standing to seek injunctive relief. Because they alleged that they would not buy the coolers again with the current labeling, they had pled no risk of imminent future injury. *Id.* at 8-10.

Five business days after the Court's ruling, Chung filed an Amended Complaint ("AC"). In his hurry, Chung shed claims and a co-Plaintiff: Plaintiff Hargrove has voluntarily dimissed his claims; and Chung now asserts *only* a single claim under NYGBL Sections 349 and 350. Ignoring the Court's ruling in several respects, he still purports to represent a nationwide class that improperly includes purchasers from outside New York. He also still requests injunctive

July 29, 2022
Page 2

relief. Moreover, even as amended, his allegations fall short of basic plausibility standards.

The AC asserts the very same theory of deception rejected by this Court the first time around. Chung once again tries to characterize the label language as an unconditional promise that his cooler would keep ice frozen for 120 hours on his fishing trips. Despite the Court's ruling, he continues to insist that "the actual message being conveyed by Igloo's '5-Day Ice Retention'… claim is that the Product will be able to keep ice in solid state for 5 days." AC ¶ 25. In fact, Chung doubles down, now alleging that reasonable consumers would expect literally every piece of ice placed in the cooler to remain frozen solid for five days in normal usage. *Id.* ("Under this definition, any amount of ice left in the cooler should remain solid ice").

The Court's July 8 Order disposes entirely of Plaintiff's Amended Complaint. *See also Turk v. Rubbermaid Inc.,* 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022). If anything, Chung's amendments make his claim even *less* plausible, as he now claims a reasonable consumer would expect every piece of ice in an Igloo cooler to remain frozen solid for five days in normal use, despite the Clarifying Language. AC ¶25. Chung's allegation "'attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349.'" *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017).

Chung's attempts to plead around the Court's order are unavailing. As Chung now acknowledges (and as reasonable people who use coolers understand), many factors influence the rate at which ice melts, including "the type of ice utilized (block ice, dry ice or cubed ice), relative humidity, the number of times the cooler is opened and closed, etcetera." AC ¶ 35. Chung's interpretation of the label – as an unconditional promise that his cooler will keep ice frozen for 120 hours in any and all uncontrolled real-world conditions – defies common sense. Indeed, his interpretation is so far-fetched that he concedes that "[n]o portable device has been invented that will perform as specified by Igloo." AC ¶26. Plainly, no reasonable consumer would read the label to promise the impossible.[1]

Chung complains that Igloo "had a duty to provide an explanatory language, albeit, the laboratory testing conditions [sic]." AC ¶36. He does not dispute that Igloo publicly disclosed information regarding its testing on its website at the time of his alleged purchase. Rather, he complains that Igloo should have printed the contents of its website on its product label, because "majority of the companies make their website information available on the product label – buyers would not have known that the term 'ice retention' would be defined on its website [sic.]." AC ¶37. The Court need not credit such "naked" and factually unsubstantiated assertions, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); common sense confirms that companies rarely (if ever) print the entire contents of their website on product labels. In any event, the label on the 90-quart Igloo Latitude *did* direct consumers to Igloo's website, as Plaintiff acknowledges. AC ¶37. A reasonable consumer interested in ice retention was on notice that additional information was available there. *Moore v Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

Next, Chung claims that Igloo intentionally concealed from its website the precise amount of ice used during the testing and falsely asserted ice begins to melt at 39 degrees. AC

---

[1] For the same reasons, Chung's claims can never be adjudicated on a class wide basis, because individualized inquiries would be required to determine whether ice melted in any given cooler due to environmental or usage factor as opposed to the alleged defect.

July 29, 2022
Page 3

¶41. Chung denies that he viewed website prior to purchase, so he lacks standing to claim that he was deceived by it. ECF 18-7 at 4. *Turk,* 2022 WL 836894 at *8. His "amendment" simply recycles allegations and arguments already rejected by the Court: that the label was misleading because testing conditions somehow did not approximate real-world conditions. ECF 1 ¶¶ 12-13, 30, 76; ECF 18-7 at 4. The label expressly discloses that "ice retention" was measured in "controlled conditions." Nothing more is required to alert a reasonable consumer that the cooler may not keep ice frozen for 120 hours in all real-world conditions. ECF 22 at 20.

Chung argues that the clarifying language is misleading because it somehow represents that "the cooler is superior to other products that do not make the same claim." AC ¶27. This allegation is disingenuous at best, given that Chung's counsel has (unsuccessfully) sued Igloo's principal competitors for the same or similar label statements. In any event, the label makes no representation of superiority. Nor does the label on Chung's $49 cooler represent superiority to the "high-end and highly regarded Yeti cooler which sells for about $350" that makes no ice retention claim (as alleged in the initial complaint but deleted here). ECF 1 ¶¶34-35. The label represents only that that the Igloo 90-quart Latitude was capable of achieving "Up to 120 Hour Ice Retention" in controlled conditions as described on the label. Critically, Chung does not allege that that statement is false in any respect.

Chung tries to impart some gravity to his frivolous claims by speculating that "it is highly likely that a large number of foodborne illness is attributable to ice cooler usage." AC ¶17. But Chung does not allege that he (or anyone else) actually got sick due to a belief that the ice in Igloo coolers would remain frozen solid for five full days. Nor could he plausibly do so. Any reasonable person can tell whether ice in a cooler is melted or melting. And nothing on the Igloo Latitude product label guarantees that the cooler will keep food *safe* for 120 hours.

Chung does not appear to have read the Court's July 8 Order carefully. He continues to pursue nationwide class claims, even though the Court specifically held that the NYGBL can be invoked only by people who bought Igloo products in New York. Although he tries to evade the Court's ruling with a laundry list of 49 other consumer protection statutes, AC ¶8, he does not purport to bring claims under any of them. Nor does he seem to have done any Rule 11 investigation, as he alleges none of the elements of a violation under any of those statutes (much less facts that would establish a violation). Finally, he renews his request for injunctive relief without alleging any new facts to establish an imminent threat of future harm. Rather, he simply deletes his binding admission from the Complaint that he will not purchase the product again unless the label is changed. Even without that admission, his allegations confirm that he cannot be deceived by the label again. *See Berni v. Barilla S.p.A.,* 964 F.3d 141, 147 (2d Cir. 2020).

In short, nothing in Chung's amendments changes the Court's prior analysis. Igloo never made the promise on which Chung bases his ill-advised lawsuit. It is difficult to see how the amendments are consistent with Rule 11, much less how they cure deficiencies already identified by the Court. Under the circumstances, Igloo believes that a pre-motion conference, whether in-person or by Zoom, is the best way to resolve the disputes before the Court and to prevent the wasteful expenditure of resources by the parties and the Court on another motion to dismiss.[2]

---

[2] If a motion to dismiss is necessary, Igloo proposes 45 days after the pre-motion conference to serve its motion to dismiss; Plaintiffs have 45 days to respond; and Igloo have 21 days to reply.

July 29, 2022
Page 4

Very truly yours,

Michael B. Shortnacy

Cc: All counsel of record (via CM/ECF)